[No. 36861.    Department Two.    June 6, 1963.]

*In the Matter of the Welfare of* STEVEN DOUGLAS DILL *et al.*

FRANCIS H. DILL, *Relator*, v. THE SUPERIOR COURT FOR
KING COUNTY, *Robert F. Utter, Judge Pro
Tempore, Respondent.**

*Thomas J. Isaac*, for relator.

*Charles O. Carroll* and *David L. Williams*, for respondent.

*Patricia J. Mucklestone*, amicus curiae.

STAFFORD, J.†—In December of 1960, Shirley Dill was placed in the King County Hospital apparently suffering from a mental condition. At that time, her daughter Jennie was 3 years of age and her son Steven was only about 6 weeks. There were no known relatives to assist Francis Dill, the children's father, and he was unable to care for them alone.

December 12, 1960, a petition was filed in the King County Superior Court alleging that the children were dependent. Pending a hearing, the judge ordered Jennie and Steven into the temporary custody of the director of the Department of Public Assistance, in lieu of detention. On the 15th of December the mother was committed to the Western

* Reported in 382 P. (2d) 266.

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

State Hospital as a mentally ill person. At the time, she was apparently suffering from paranoid schizophrenia with sexual delusions. January 17, 1961, the father agreed that Jennie and Steven should be made wards of the juvenile court and placed in the temporary custody of the Department of Public Assistance. On March 22nd both youngsters were declared to be dependent and were made wards of the court. The Department of Public Assistance was ordered to arrange for foster home care until further order of the court.

July 5th, Mrs. Dill was classified as "improved" and was released from the mental hospital on terminal leave. On October 3rd Francis and Shirley Dill jointly petitioned the juvenile court for return of Jennie and Steven. October 27th the Department of Public Assistance petitioned the court for an order permanently depriving the parents of their rights to both children. It was alleged that the parents were morally and mentally unfit to raise the youngsters. The court was asked to make them available for adoption.

Both petitions were heard December 15, 1961. The parents appeared personally and with their attorney. At that time, Mrs. Dill's mental status had neither been reclassified as "recovered", nor had there been a judicial restoration of her civil capacity.

The court found that the parents were unfit to raise Jennie and entered an order of permanent deprivation. She was placed with the Medina Children's Service for adoption. Steven, on the other hand, was permitted to remain in a foster home until further order of the court.

The matter was reviewed by this court in *In re Dill,* 60 Wn. (2d) 148, 372 P. (2d) 541 (1962). It was held that Mrs. Dill was under such a legal disability that she could appear in court only by a guardian ad litem or by a regularly appointed guardian. The statutory mandate of RCW 4.08.060 was not satisfied by having her represented by an attorney. For this reason, the order of deprivation was reversed.

June 21, 1962, the Department of Public Assistance filed a new petition alleging that the parents were morally and

physically unfit to raise the children. Once again it asked for an order of permanent deprivation.

At the hearing in October of 1962, Mrs. Dill appeared personally and with her guardian ad litem, who was also an attorney. Mr. Dill appeared in person with another attorney. After the hearing, the court entered its order of November 16, 1962. Both parents were permanently deprived of all parental rights in Jennie. She was again placed with the Medina Children's Service for adoption. Steven was permitted to remain a ward of the court under the foster home care program.

Neither parent has questioned the court's order pertaining to Steven. However, Mr. Dill seeks a review of the order of deprivation in so far as it relates to Jennie. Mrs. Dill has sought no review, either individually or through her guardian ad litem. Thus, the father is the only party to this proceeding.

The father has assigned error to five findings of fact. Although they cover several different subjects, they fit into two broad categories. First, it is asserted that the trial judge should have believed Mr. Dill's explanation of events and his protestations of innocence and, in addition thereto, should have given greater weight to the testimony of his other witnesses, including his "experts."

The trial judge had the witnesses immediately before him and was better able to evaluate their testimony. He had a better opportunity than we to ascertain and determine the conditions affecting the welfare of the child. We have consistently held that, in matters affecting the custody of minor children, the judgment of the trial court will not be disturbed except for manifest abuse of discretion. *Sumner v. Superior Court*, 19 Wn. (2d) 5, 140 P. (2d) 784 (1943); *Fuhrman v. Arvin*, 21 Wn. (2d) 828, 153 P. (2d) 165 (1944); *In re Three Minors*, 50 Wn. (2d) 653, 314 P. (2d) 423 (1957); *Cumbie v. Cumbie*, 61 Wn. (2d) 669, 379 P. (2d) 918 (1963).

The second problem raised by the father's assignments of error is whether the evidence merits a finding of parental unfitness. We have carefully reviewed the facts. Nothing

will be accomplished by enumerating all of the sordid details in this opinion.

It is not necessary for the trial court's determination to stand solely upon damaging accusations made to various witnesses by the mother. The record is replete with other facts. The court cannot ignore the child's filthy vocabulary. Her provocative, immoral, sexual orientation with regard to males of all ages is important. The father's failure to correct this problem, even when it involved him personally, is significant. He admitted that his wife "ordered" him to strip in the child's presence and that he did other improper things with the child in his wife's presence. By agreement with his wife, Mr. Dill admittedly was sterilized. Witnesses indicated that his wife wanted this to be done to curb his sex desire. He told witnesses that he felt "his morals would be all right now because he had a sterilizing operation."

These tightly interrelated matters are wholly inconsistent with Mr. Dill's explanations, denials and protestations of innocence pertaining to another incident that will not be related here. These same facts lend great weight to the trial court's determination that the parents were unfit to raise Jennie.

After considering all factors involved, it cannot be said that the trial court abused its discretion. The order of deprivation is affirmed.

OTT, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.

---

July 25, 1963. Petition for rehearing denied.