[No. 37803. Department One. July 22, 1965.]

*In the Matter of the Application for a Writ of Habeas Corpus of* MARIANNE MUELLER HANCASKY *et al.**

*Delay & Curran* and *J. Donald Curran*, for appellants.

*Little & Jones*, by *Jay Roy Jones*, for respondent.

OTT, J.—October 8, 1963, Marianne Mueller Hancasky, by an amended application, sought a writ of habeas corpus

*Reported in 404 P.2d 762.

in the Superior Court for Pend Oreille County, contending that her daughter, Jane Mueller, aged 3½, was being illegally detained by Otto F. Becken and wife.

The Beckens answered the amended application, alleging that on August 19, 1960, Marianne Hancasky (then Coughlin) had abandoned the child, and praying that the application for a writ of habeas corpus be quashed and that the infant be declared a ward of the state.

The cause was tried to the court, which found that Marianne Hancasky and her husband, Robert Hancasky, had abandoned the child August 19, 1960. The court ordered the child to be a ward of the State of Washington, and awarded temporary custody to Otto F. Becken and wife.

From the judgment entered accordingly, the Hancaskys have appealed.

Appellants, in their brief, state the issue on appeal to be:

Did the natural parents of "Jane" Mueller, also known as Donna Ellen Becken, abandon said child under circumstances showing a wilful and substantial lack of regard for parental obligations?

The facts giving rise to this appeal are substantially as follows:

August 15, 1960, Marianne Mueller Coughlin gave birth to a girl at the Brookhaven Memorial Hospital in Patchogue, New York. At the time of this birth, Marianne was married to William Coughlin, although she had been separated and living apart from her husband since August 1959. She did not want her husband to know of the birth, and had the birth registered in her maiden name of Mary Louise Mueller. In this regard, her friend, Edna Phelps, stated in her deposition:

4. Were you acquainted with a Mary Mueller Coughlin, now known as Marianne Mueller Hancasky on the 15th day of August, 1960 and prior thereto?

Answer: Yes. Shortly prior to August 15, 1960, I went to talk to Mary Mueller Coughlin, because I knew that she was expecting a child, and she advised me that she wanted to get the child placed before her husband knew about it, and that she didn't care where the child went or who had it, and that she never wanted to know any-

thing about it in any way, and that she wouldn't be concerned after it was picked up at the hospital, as she wasn't going to take it home with her.

. . . .

8. Please state how you happened to know that the said child would be available for adoption.

Answer: I had been advised that Mary Coughlin was interested in obtaining a divorce from her husband and did not want him to know about the birth of the child. Also, prior to that time, my sister, Mrs. Gert Corey adopted a child born to Mary Mueller Coughlin.

9. State whether or not Mary Mueller Coughlin, now known as Marianne Mueller Hancasky has contacted you subseqeunt to August 15, 1960 concerning information as to the welfare or the whereabouts of her said child born August 15, 1960.

Answer: no—never

Mrs. Jane Lorenz, in her deposition, described the mother's relinquishment of the infant on August 19, 1960, as follows:

On the 19th day of August, 1960, I went with Rev. Otto F. Becken and his wife Mary to the Brookhaven Memorial Hospital at Patchogue, Suffolk County, New York for the purpose of acting as a witness and to receive a female infant born to one Mary Mueller Coughlin, on August 15, 1960 in said hospital. Rev. Otto F. Becken and his wife and myself were accompanied on said trip to the hospital by one Virginia S. Purnell.

I had been advised that Mary Mueller Coughlin had previously arranged for the release of her infant child for adoption with one Edna Phelps of Riverhead, New York, who in turn had made arrangements with the Beckens to receive said child. I was advised that Mary Mueller Coughlin did not want to know who received the child, nor did she want to know their names, and therefore when we arrived at the hospital, Rev. and Mrs. Becken waited in a room down the hall and Virginia S. Purnell and myself waited in the waiting room at the hospital until Mary Mueller Coughlin, accompanied by a male companion and a nurse was carrying the infant child, came into the waiting room of the hospital. Mary Mueller Coughlin, her male companion, the nurse and the newborn child and myself then went outside the hospital door and stood on the hospital steps. The nurse continued to hold the baby. I then read a release, which

had been previously prepared, to said Mary Mueller Coughlin, wherein she agreed to release her newborn child to my care, for release, in turn, to the adopting parents, who were to remain unknown to Mary Mueller Coughlin. I asked Mary Coughlin her name and address, and she instructed me to fill them in as Mary Mueller, and I asked her further if she fully understood that she was releasing her newborn child to me to be placed out for adoption. She said, "yes, I understand." Thereafter, said Mary Mueller Coughlin signed her name in full to said release in my presence and in the presence of Virginia S. Purnell, who also affixed her name to the document. The nurse then gave the baby to Mary Mueller Coughlin who, in turn, released the baby to me. I carried the baby back into the hospital and released it to Rev. Otto F. Becken and Mary Becken, his wife. We all then waited until Mary Mueller Coughlin and her male companion drove away from the hospital grounds. Rev. and Mrs. Becken, the baby, Virginia Purnell and myself then left the hospital.

Virginia S. Purnell's deposition corroborated the statements of Jane Lorenz in every material detail.

The release Marianne Mueller Coughlin signed at the time she delivered the child to Mrs. Lorenz provided:

I, Mary Mueller residing at Hampton Bays being over the age of twenty-one years, do hereby state that on the 15th day of August, 1960, I gave birth to a child at the Brookhaven Memorial Hospital in Patchogue, New York.

I hereby authorize Mrs. Douglas R. Lorenz to take custody of said child and to release the child to Rev. & Mrs. O. F. Becken residing at Noyac Rd—Noyac, N. Y.

It is my understanding that the said Rev. & Mrs. O. F. Becken will pay the hospital bill and the bill for the doctor's services. I have received no monies for the release of my child.

[signed] Mary Mueller Coughlin

Sworn to before me this
19th day of August 1960
[signed] Virginia S. Purnell

Reverend Otto F. Becken and wife, as agreed, paid the doctor and hospital expenses. They named the child Donna Ellen Becken, and have had continuous care and custody of her since August 19, 1960.

After the expiration of the 6 months' waiting period required by New York law before adoption, the Beckens employed an attorney to complete the formal adoption. The attorney could not locate the mother to obtain a formal consent. After several months of inquiry and search, the attorney sent the following letter by certified mail:

May 25, 1961

Mrs. Mary Coughlin
Springville Road
Hampton Bays, New York
Dear Mrs. Coughlin:

I am writing you to inform you that I have been retained by the people who started the adoption of your daughter who was born on August 15, 1960 at the Brookhaven Memorial Hospital in Patchogue, N. Y. They have retained me since Mr. Helfrich did not proceed with the matter.

I can handle this matter very simply if you are willing to come to my office to sign the necessary consents. I do not believe that you will have to appear in court at all. Please contact me as soon as possible in this matter.

Very truly yours,
[signed] Oliver W. Hubbard

The mother received the letter but did not answer it. The attorney could not obtain her residence address because the letter had been delivered to a locked box number.

March 10, 1962, after one day's residence in Mexico, Marianne Mueller Coughlin obtained a divorce from William Coughlin in Ciudad Juarez, Chihuahua, Mexico. On November 21, 1962, she married Robert Hancasky.

January 4, 1963, Mrs. Hancasky was finally located, through the efforts of an attorney, a private detective, and a social worker. She at first agreed to sign a formal consent for adoption; however, when the document was presented for her signature, she refused to execute it, and stated she had decided "to get the child back."

February 10, 1963, the Beckens moved to Newport, Pend Oreille County, Washington, to carry on his church work.

The trial court found the facts to be substantially as above indicated. From these facts, the court entered the following conclusions of law:

## I.

That the child known as Donna Ellen Becken, born of Marianne Mueller Coughlin and Robert Hancasky, the 15th day of August, 1960, birth registered under No. 1721, Registrar's Office, Town of Brookhaven, County of Suffolk, State of New York, August 22, 1960, was abandoned by said natural parents under circumstances showing a wilful substantial lack of regard for parental obligation, and with the express intention that said child be adopted by Rev. Otto F. Becken and Mary Becken, his wife.

## II.

That by virtue of said abandonment and residence of said child in Pend Oreille County, State of Washington, Donna Ellen Becken should be made a permanent Ward of this court and temporary custody granted to Rev. Otto F. Becken and Mary Becken, his wife, who have provided her parental love, care and support continuously since August 19, 1960, and all rights and claims of the natural or biological parents, Marianne Mueller Hancasky (Coughlin at the time of the birth of said child) and Robert Hancasky be terminated and at an end.

## III.

That the proof submitted on the application of Writ of Habeas Corpus having been totally insufficient, said Writ of Habeas Corpus heretofore entered herein should be quashed.

The legislature has provided, by RCW 26.32.040(4), that

No consent for the adoption of a minor shall be required as follows:

. . . .

(4) From a parent who has been found by a court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child under circumstances showing a wilful substantial lack of regard for parental obligations; . . . .

In order to constitute an abandonment, there must be an intention to abandon in the sense of relinquishing all claims that the parents have upon the child. *In re Crozier*, 44 Wn.2d 901, 904, 272 P.2d 136 (1954), and cases cited.

A review of the evidence establishes that Marianne Hancasky, on August 19, 1960, four days after the birth of the

child, signed a statement which read: "I have received no monies for the *release* of my child." (Italics ours.) When Mrs. Hancasky was asked by Jane Lorenz whether she understood that she was placing her newborn child for adoption, she answered, " yes, I understand."

 She had previously relinquished one of her children for adoption by the sister of Edna Phelps, and she was thoroughly familiar with the processes of an adoption proceeding, and knew that it terminated her parental responsibilities. Her only explanation of her conduct at the time of her relinquishment of Donna was that she was confused and did not know what she was doing. Assuming her statement that she was confused is true, she did nothing to regain custody of the child she had relinquished for approximately 2½ years—only then did she decide to try to get her baby back. Her conduct from August 19, 1960, to July 26, 1963 (when the original application for a writ of habeas corpus was filed), was consistent with an intentional abandonment of the child, Donna Becken.

At the time of the mother's abandonment of Donna on August 19, 1960, the alleged natural father, Robert Hancasky, had no status to claim any parental responsibility or rights, and William Coughlin, to whom the mother was then married, subsequently relinquished his rights to the Beckens.

The evidence before us amply sustains the trial court's findings of fact, and these findings support its conclusion of law that Donna Ellen Becken "was abandoned by said natural parents under circumstances showing a wilful substantial lack of regard for parental obligation."

The judgment is affirmed.

ROSELLINI, C. J., HILL and HALE, JJ., and SHORETT, J. Pro. Tem., concur.