[No. 3987-1.   Division One.   April 5, 1976.]

*In the Matter of the Welfare of* ALBERT JEFFREY
LEE HAUSER.

*Merrick, Hofstedt & Lindsey, Gary R. Eliasen, Morrow & Mainland,* and *David F. Mainland,* for petitioners.

*Slade Gorton, Attorney General,* and *Michael T. Mitchell, Assistant,* for respondents.

CALLOW, J.—The petitioners, Larrien Phillips and Albert Hauser, Jr., seek review of an order permanently depriving both petitioners of all parental rights in and to their child, Albert Jeffrey Lee Hauser. The petitioners challenge findings of the trial court, assert that the child was not dependent under RCW 13.04.010, and that the permanent deprivation order should be reversed. The petitioner Albert Hauser, Jr., asserts that he was denied consideration of his individual fitness as a parent because of his sex. We find that clear, cogent, and convincing evidence supports the findings entered, concur with the conclusions reached, and affirm.

The initial inquiry is whether the Superior Court had jurisdiction to order permanent deprivation. The petitioners argue that a finding of "dependency" as defined by RCW 13.04.010(3)[1] empowers the court to order only temporary, rather than permanent, deprivation of parental rights, citing *In re Sickles,* 42 Wn.2d 17, 252 P.2d 1063 (1953). The *Sickles* case held that there was insufficient factual support to justify the permanent deprivation order entered. It was stated that if the evidence is such that dependency exists because the conduct of the parent makes the home an unfit place to live as defined by RCW 13.04.010(3),[2] the deprivation may be only on a temporary, rather than on a permanent, basis. The appellate court in the *Sickles* case viewed the condition that caused the dependency as probably correctable. The circumstances before us here involve the absence of parental control with no

---

[1] "Whose home by reason of neglect, cruelty or depravity of his parents or either of them, or on the part of his guardian, or on the part of the person in whose custody or care he may be, or for any other reason, is an unfit place for such child; . . ." RCW 13.04.010(3).

[2] At the time *Sickles* was decided, RCW 13.04.010(3) appeared as RCW 13.04.010(8). In 1961, RCW 13.04.010 was amended and the former subsection (8) became the present subsection (3). Laws of 1961, ch. 302, § 1, p. 2473.

likelihood that parental control will be exercised in the future as defined by RCW 13.04.010(2).[3] Permanent deprivation may be ordered under subsection (2) of the statute when clear, cogent, and convincing evidence is present that the welfare of the child will be enhanced thereby. Further, when a child has been found to be dependent under *any* of the statutory grounds, the child beomes a ward of the state "subject to the custody, care, guardianship and control of the court . . ." RCW 13.04.010. Under RCW 13.04.095, enacted subsequent to the *Sickles* decision, "the court shall make such order for the care, custody, or commitment of the child as the child's welfare in the interest of the state require", when dependency is found under RCW 13.04.010. An order of commitment may be temporary or permanent in the discretion of the court. RCW 13.04.100. The grant of judicial power to order a permanent deprivation expressed in RCW 13.04.095 and 13.04.100 is available whatever grounds are proven under RCW 13.04.010. The superior court has the discretion to order permanent deprivation when a finding of dependency under any of the subsections of RCW 13.04.010 has been entered, based upon substantial evidence, and there is clear, cogent, and convincing evidence that the welfare of the child will be served by permanent removal from the custody of the parents. *In re Sego*, 82 Wn.2d 736, 513 P.2d 831 (1973); *In re Sickles, supra* (concurring opinion). Jurisdiction existed in the trial court to permanently deprive the petitioners of their parental rights.

The primary issue raised is whether sufficient evidence supports the findings and order of permanent deprivation. The findings of a trial court which are based upon substantial evidence will not be disturbed on review. *In re Sego, supra. See also Todd v. Superior Court*, 68 Wn.2d 587, 414 P.2d 605 (1966). Clear, cogent, and convincing evidence must be in the record to support the permanent deprivation

---

[3]"Who has no parent, guardian or other responsible person; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; . . ." RCW 13.04.010(2).

of parents of the care, custody, and control of a child. There must be a showing that it is "highly probable" that the welfare of the child will be enhanced by taking the child from the parents. *In re Sego, supra; In re May,* 14 Wn. App. 765, 545 P.2d 25 (1976); *In re Price,* 13 Wn. App. 437, 535 P.2d 475 (1975). The petitioners assert that the evidence of their mental disorders cannot support an order of permanent deprivation. However, we hold that the burden of proof has been met and that it has been shown to be highly probable that his welfare will be promoted by placing him permanently in the custody of others.

The testimony at the hearing showed that the child, born July 29, 1973, first came to the attention of the Department of Social and Health Services (hereinafter referred to as "department") on October 1, 1973. On that date, the child's mother was arrested for disturbing the peace. The child spent 4 days in a receiving home before being returned to his mother. On November 22, 1973, the mother left him unattended in a disabled automobile. On December 21, 1973, the mother left the home and, while either waiting for a telephone booth to empty or for a bus to arrive, placed the child on the ground. Police were summoned, and the mother was arrested for child abuse. The child was again placed in a receiving home. A dependency petition was filed, and the child was placed in a foster home on January 4, 1974. Thereafter, the parents visited the child on January 14, March 11, April 29, and June 3, 1974. The testifying caseworkers characterized each visit as disruptive, frightening, and upsetting to the child. Shortly after the final visit, the petitioner Phillips was again arrested for disturbing the peace and committed to Western State Hospital for 6 weeks.

A petition for permanent deprivation was filed on November 18, 1974. At the factfinding hearing, conflicting testimony from lay witnesses was presented concerning the parents. The petitioners and the department also introduced expert testimony regarding the capabilities of the petitioners as parents. The petitioners offered the testimony

of their treating psychiatrist at the Harborview Mental Community Health Center. This psychiatrist testified that, although both parents suffered from paranoid schizophrenia, proper medication would keep the mental disorders in remission. In his opinion, the petitioners could learn to be appropriate parents with continued medication, treatment, and support. The department introduced the expert testimony of another psychiatrist who had interviewed both the petitioners and the child. This psychiatrist also testified that both parents were paranoid schizophrenics. In his opinion, the petitioners would require assistance to perform successfully as parents. He stated that although the petitioner Hauser might accept such support, it was unlikely that the petitioner Phillips would accept needed assistance. The department's psychiatrist testified that the petitioners did not have the ability to perform parental responsibilities. He stated that the child was progressing well in foster care, had no emotional ties to his natural parents, and a return to the natural parents would create detrimental emotional problems. The trial judge found that both parents suffered from paranoid schizophrenia, were neither able to control their mental disorders nor deal with stressful situations, and were unable to provide a stable, stimulating environment for the child. The trial court concluded that the child was dependent and that its best interests and welfare required that he be made available for adoption by permanently depriving the natural parents of all rights in and to the child.

■ The testimony sufficiently supports the trial court's finding that the mental disorders of both parents make them incapable of controlling their own emotions and of providing a proper parental and home environment for the child. The totality of the circumstances constitutes clear, cogent, and convincing evidence to support the order of permanent deprivation. *See In re Russell*, 70 Wn.2d 451, 423 P.2d 640, *cert. denied*, 389 U.S. 874 (1967); *In re Dill*, 62 Wn.2d 305, 382 P.2d 266 (1963). Parental rights must yield to the interests of the child when it is highly probable that

its welfare is at stake. *In re Sego, supra; In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Petrie,* 40 Wn.2d 809, 246 P.2d 465 (1952); *In re Day,* 189 Wash. 368, 65 P.2d 1049 (1937); *In re Gillespie,* 14 Wn. App. 512, 543 P.2d 249 (1975); *In re Price, supra.*

The petitioners contend that the finding that the child had no residual relationship with the natural parents was irrelevant and that basing the decision to permanently deprive them of parental rights upon that finding was a violation of due process. We recognize, as stated in *In re Luscier,* 84 Wn.2d 135, 137, 524 P.2d 906 (1974), that "the full panoply of due process safeguards applies to deprivation hearings." We consider the finding, however, as directly relevant to the paramount consideration of the best interests of the child. *In re Sego, supra.* If the only basis for restricting parental visitations was a pending permanent deprivation proceeding, and a finding of no residual relationship between the natural parents and the child was based upon the agency-created absence of visitations, the injustice of such authoritarian dominance would be apparent. The circumstances surrounding the present situation, however, reveal that the decision to restrict visitation was based predominantly upon the parents' conduct and its effect upon the child during previous visitations. Further, the conclusion to permanently deprive the petitioners of their parental rights was based upon the clear, cogent, and convincing evidence of the parents' prior conduct, mental disorders, and demonstrated inability to perform as parents, as well as upon the absence of a relationship of the child towards the parents. Were the evidence regarding the lack of a relationship on the part of the child to the parents to be removed from consideration, the record would still contain evidence sufficient to support the order of permanent deprivation. *McLeod v. Keith,* 69 Wn.2d 201, 417 P.2d 861 (1966); *In re Price, supra; DeYoung v. Swenson,* 6 Wn. App. 452, 493 P.2d 1247 (1972).

The petitioner Hauser contends that the decision to permanently deprive him of his parental rights was based

solely on his sex. He asserts that the court refused to consider his individual abilities as a parent because he was a male, and that the court's decision therefore was contrary to article 31 of the Washington State Constitution. Const. art. 31, § 1 provides that "Equality of rights and responsibility under the law shall not be denied or abridged on account of sex." The provision is an absolute prohibition against discrimination *based on sex. Darrin v. Gould,* 85 Wn.2d 859, 540 P.2d 882 (1975). The record does not substantiate the claim that the parental rights of the petitioner Hauser were permanently removed because of his sex, but supports instead the conclusion that the welfare of the child will be enhanced by removal from the care, custody, and control of the unstable situation proffered by continuance of a relationship with the petitioner Hauser and all that continuance of that relationship portends.

Affirmed.

JAMES and SWANSON, JJ., concur.