[No. 2917–2.  Division Two.  August 22, 1978.]

*In the Matter of the Welfare of*
TRACY JOE HAGEN, ET AL.

*Ben Shafton* of *Clark County Legal Services,* for appellant.

*James E. Carty, Prosecuting Attorney,* and *Richard A. Monaghan, Deputy,* for respondent.

PETRIE, J.—The natural mother of two minor children, Linda Sue Hagen, appeals from an order permanently depriving her of the care, custody and control of those children and committing them into the permanent custody of the Department of Social and Health Services for the purpose of adoption. Mrs. Hagen contends that the trial court abused its discretion by "cutting off" her testimony during the first hearing on this matter; she further argues that the evidence adduced at trial was not sufficient to support the deprivation order. We agree with both claims and reverse.[1]

On August 6, 1975, Tracy Hagen, 3 years of age, and Terry Hagen, 16 months of age, were taken to the Clark County juvenile authorities by their temporary babysitter after Mrs. Hagen failed to return for them when promised. Although the children were clean and generally healthy, Tracy was suffering from a "staph" infection. Tracy was treated by medical personnel and both children were placed in foster care in the home of a Mrs. Frieda Stevens. On August 12, Mrs. Hagen contacted Marguerite Matusak, the Child Protective Service caseworker then assigned to this matter. After some discussion, Mrs. Hagen decided to leave the children in the foster home for a while longer. She was apparently quite upset about the recent incarceration of the children's father, Ernest Hagen, and felt that she could not support the children in an adequate fashion. A petition to have the children declared "dependent" was filed on September 2, 1975. In January of 1976, Mrs. Hagen was convicted of forgery and placed on probation. An order declaring the children to be dependent was entered on February 3.

Between August 1975 and September 1976, Mrs. Hagen visited the children very infrequently and failed to communicate regularly with the juvenile authorities. In September 1976, she moved into the home of her aunt and uncle and reestablished contact with the Department of Social and

---

[1]The children's father, Ernest Hagen, was also a party at trial. He did not appeal from the order depriving him of his rights to the children.

Health Services, Child Protective Services. By this time, Mrs. Hagen had "separated" from Ernest Hagen; however, the two were still legally married. On October 1, Mary DeBoever, the newly assigned caseworker, arranged a meeting between Mrs. Hagen and the children. The visit apparently went well. Although weekly visits with the children were then scheduled, Mrs. Hagen failed to keep the appointments. On November 8, 1976, Mrs. Hagen was served with a deprivation petition. Mrs. Hagen visited the children each Monday from November 8 until the date of the deprivation hearing.

The hearing was held on December 21, 1976. Mrs. Stevens testified that the children enjoy seeing Mrs. Hagen and that they distinguish between their "real" and "temporary" mothers. The caseworker, Mrs. DeBoever, stated that she had not visited Mrs. Hagen at her aunt and uncle's residence in order to determine if it would be an appropriate home for Tracy and Terry because it was not an "independent" living situation. She further stated that after November 8, 1976, no further effort to reconcile the family was made since a petition for permanent deprivation was pending. Finally, although Mrs. DeBoever had only met Mrs. Hagen on two occasions, she testified that Mrs. Hagen appeared to be unstable. The State also called an expert witness, Wanda Cheek, a child welfare and adoption worker. Ms. Cheek provided the court with general information concerning the effects of temporary foster care placement on young children. Although she had never met Terry or Tracy Hagen, she asserted that most children who experience a similar situation develop some sort of long–term social problems.

Mrs. Hagen, testifying in her own behalf, stated that she wanted her children back and believed she was now more ready to handle responsibility. She informed the court that she had been seeking work and planned to move into her own home as soon as possible. In the middle of direct examination, the trial judge "cut off" her testimony, stating that he had heard enough to conclude that the allegations

in the petition had been satisfactorily proven. He entered a permanent deprivation order but suspended it providing: (1) Mr. and Mrs. Hagen resolve their marital status; (2) the parents (separately or together) establish self–supporting independent living situations; (3) they maintain regular employment; and (4) they maintain close contact with their respective probation officers. The matter was continued until April 12, 1977.

Because our reading of the record convinces us that the decision to deprive the parents of their children was reached at the December hearing, we will not discuss the April proceedings in great detail. It is sufficient to say that Mrs. Hagen was not able to convince the trial judge that she had complied with his four conditions. The April hearing was limited essentially to a search for how well Mrs. Hagen complied with those four conditions. Nevertheless, she was permitted to present testimony of a clinical psychologist who expressed the opinion that "she could be" a fit and proper mother. A final deprivation order was entered on May 26, 1977.

■ We will first address Mrs. Hagen's claim that the trial court erred in limiting her testimony during the December hearing. Although a parent's right to the custody and control of her child is not absolute, the termination of such right is a serious and weighty matter, striking at a relationship so fundamental as to be of primary importance in the structure of our society. Due process requires that a parent be given a full and meaningful hearing prior to being forced to forego this valuable human relationship. *In re Myricks,* 85 Wn.2d 252, 533 P.2d 841 (1975); *In re Luscier,* 84 Wn.2d 135, 524 P.2d 906 (1974). At that hearing, parents must be permitted to present their version of the facts to the trial judge. *In re Houts,* 7 Wn. App. 476, 499 P.2d 1276 (1972). We sympathize with the trial court's frustration at the length of this particular hearing, and are aware that deprivation hearings can be emotionally trying for all concerned. (The record indicates that the hearing commenced at 2:30 p.m. and adjourned at 7:06 p.m.) We

are forced to conclude, however, that the trial court's decision to "cut off" Mrs. Hagen's testimony deprived her of the opportunity to fully present her case and, therefore, violated her right to due process of law. Although Mrs. Hagen was permitted in April to present evidence not strictly limited to her compliance with the court's previous order, a commendable practice, we cannot hold the truncated procedure in December was thereby rendered harmless. Because the decision to deprive was actually made at the December hearing, the testimony in April cannot be said to have cured the earlier error.

■ We now address the second issue raised by Mrs. Hagen. In reviewing an order of permanent deprivation, the appellate court must determine if there is substantial evidence in the record to support the determination in light of the "highly probable" test. *In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973). This review is more searching than that undertaken in the usual appeal. As stated by the court in *Sego* at page 739:

> [E]vidence that may be sufficiently "substantial" to support an ultimate fact in issue based upon a "preponderance of the evidence" may not be sufficient to support an ultimate fact in issue, proof of which must be established by clear, cogent and convincing evidence.

(Footnote omitted).

Here, deprivation was sought under subsection (2) of RCW 13.04.010 which states:

> For the purpose of this chapter the words "dependent child" shall mean any child under the age of eighteen years:
>
> . . .
>
> (2) Who has no parent, guardian or other responsible person; or who has no parent or guardian *willing* to exercise, or *capable* of exercising, proper parental control; or

(Italics ours.)

Although this section speaks of "dependent children," the superior court has jurisdiction to order permanent deprivation, following a hearing for which adequate notice has been given, whenever a finding of dependency under

any of the subsections of RCW 13.04.010 has been entered. *In re Hauser,* 15 Wn. App. 231, 548 P.2d 333 (1976). *See also* RCW 13.04.095 and RCW 13.04.100. It is also clear that a deprivation order will not be upheld unless there is sufficient evidence in the record to support a finding that it is "highly probable" the welfare of the child will be enhanced by taking him from his parents. *In re Hauser, supra; In re Price,* 13 Wn. App. 437, 535 P.2d 475 (1975). In other words, on appeal we test the sufficiency of the evidence regarding proof of both the specific statutory grounds for deprivation and of the general requirement that deprivation be found to be in the best interest of the child. *See In re Hendrickson,* 7 Wn. App. 485, 499 P.2d 908 (1972).

Under the petition as presented to the trial court, the State of Washington had the burden of proving that these two children had no parent willing or capable of exercising proper parental control. Apparently, the State is not pursuing on appeal the theory that the welfare of the children requires that their mother be permanently deprived of their care, custody and control because she is not "capable" of exercising proper parental control. Its concern appears to us to be directed primarily at how long it must pursue the role of providing temporary care for the children. In any event, the record falls far short of sufficient evidence to establish as a high probability that Mrs. Hagen is not capable of exercising proper parental control. She has not been granted the opportunity to demonstrate the lack of capability, with or without affirmative assistance from the State, since August 1975.

The State does appear, however, to rely upon the lack of a "willing" parent and, therefore, contends Mrs. Hagen, in effect, abandoned them.

Abandonment requires an intention on the part of the parents to permanently relinquish all claims to the child. *In re Crozier,* 44 Wn.2d 901, 272 P.2d 136 (1954); *cf. In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969); *In re Hancasky,* 66 Wn.2d 680, 404 P.2d 762 (1965) (abandonment under RCW 26.32.040(4)—the adoption

statute). *See also* 35 A.L.R.2d 663 (1954). We find no evidence that Mrs. Hagen ever *expressly* intended to divest herself permanently of the responsibility of caring for Tracy and Terry. Rather, the record shows that she at all times manifested a desire to be reunited with her children. We do not condone Mrs. Hagen's actions and understand that at some point declarations of love and affection cannot override a parent's continued disregard of her children's welfare. Had the juvenile authorities made more of an affirmative effort to reunite this family, we might be more critical of Mrs. Hagen's actions and attitudes. However, as the record stands, we do not find substantial evidence that Mrs. Hagen *impliedly* intended to relinquish all claim to her children.

At oral argument, the State characterized its theory of this case as one of "constructive abandonment." We have some difficulty in identifying the precise meaning of that term. It appears that the State, recognizing that it cannot meet its burden of proving an express or implied abandonment *in fact,* seeks to deprive Mrs. Hagen of the care and custody of her children on a theory of abandonment implied *by law.* This novel theory—based on public policy considerations—comes to us unsupported by relevant authority. The State's concern with the length of time for which it has provided "temporary" care for these children is understandable; however, we cannot affirm an order of deprivation that is not grounded in one of the specifically enumerated statutory criteria. *In re Hendrickson, supra;* RCW 13.04.010.

Finally, we note that the record does not support a finding that depriving the mother of her rights to Tracy and Terry is in their best interest. Although another home might theoretically be better for these children, that, in itself, is not sufficient to justify an order of permanent deprivation. *In re May,* 14 Wn. App. 765, 545 P.2d 25 (1976). We are convinced that the allegations in the petition have not been satisfactorily proved; we must, therefore, reverse the order insofar as it permanently deprives

Mrs. Hagen of the care, custody and control of her children. However, the children will continue as wards of the juvenile court.

PEARSON, C.J., and SOULE, J., concur.

Reconsideration denied September 19, 1978.