[No. 2848–2.   Division Two.   October 4, 1978.]

*In the Matter of the Adoption of*
TODD ANGELO GARGAN.

*Marjorie M. Forest,* for appellant.

*J. Rex Behrhorst,* for respondent.

SOULE, J.—This is an appeal from an order in an adoption proceeding dispensing with the consent of the natural father of Todd Gargan. We affirm.

Todd Gargan was born in Snohomish County on June 5, 1964. His parents were divorced October 2, 1968, in the same county. By the decree of divorce custody was given to his mother. His father was given specific visitation rights on the first and third Sundays. of each month, subject to the requirement that he give 1 hour advance notice of his intention to exercise that right. He was also required to pay $100 per month as child support. Mother and son continued to reside in Snohomish County until her remarriage in 1974. During this period, the father visited his son occasionally. During this same period, he paid some small amount of support money for the child but far less than that required by the divorce decree. From 1968 through 1972, he paid less than $1,200, and he has paid nothing since October 1972.

On disputed evidence, the court made the following findings of fact:

5.

That the natural father, JOHN J. GARGAN, has not visited with his child since Christmas of 1973, nor has he written letters, sent any gifts or cards, and has paid no

child support since 1972, although the Decree of Divorce provided that he pay $100.00 per month child support.

6.

That although the natural father, JOHN J. GARGAN, has indicated he has made some attempts to visit with his child, he has not attempted to enforce any of these rights through the Courts until the time this Petition was filed, although he could have done so, and his visitation record in Snohomish County some years back was spasmodic at best.

7.

That TODD ANGELO GARGAN, a/k/a TODD ANGELO GARGANO, has joined in this Petition, has been quite candid with the Court in Chambers in the presence of the attorneys for the respective parents, and his position must be considered.

Based on the evidence as expressed in the findings of fact, the court entered conclusions of law as follows:

1.

That the parental relationship is subordinate to the moral, intellectual and material welfare of this child, TODD ANGELO GARGAN.

2.

That it would be in the best interests of this child, TODD ANGELO GARGAN, to enter an Order declaring that the Consent of the natural father, JOHN J. GARGAN, is not necessary, nor shall it be required as such parent has deserted or abandoned such child under circumstances showing a willful, substantial lack of regard for parental obligations.

Error is first assigned to what the appellant denominates the finding that the father abandoned Todd. More properly, we consider that the error is directed to the conclusion to the same effect. In so doing, appellant asserts that the evidence does not meet the "clear, cogent and convincing" standard.

Error is next assigned to the finding that he had not attempted to enforce his visiting rights through the courts until the adoption petition was filed. (Finding of fact No. 6.)

Lastly, error is assigned as follows:

The trial court erred in basing his decision largely upon the statements of the minor son, who was 12 years of age at the time.

We find it convenient to consider the assigned errors in reverse order.

Without objection, the trial judge interviewed the boy in chambers on the record in the presence of counsel. He was then nearly 13 years old. In that discussion, the boy's statements differed markedly from that of the father on the frequency of visitations before 1974. He stated that even when he and his mother still lived in Snohomish, his real father did not spend time with him. He stated further that he loved his stepfather and did not like his real father "too much." In rendering its oral decision, the trial court did place some reliance on the wishes of the boy and noted that it would be in the best interests of the boy to grant the adoption. The trial court recognized, as does every trial judge in a similar situation, the possibility that over the years the mother's attitude toward her former husband had influenced the boy's attitude and the court quite forthrightly based its judgment in part on the relationship between the natural mother and the natural father. Although the trial judge did not specifically so characterize it, a reading of the record can lead only to the conclusion that that relationship is bad, due in substantial part to the actions of the natural father.

■ The father argues that, unlike a custody case, the wishes of the child should not be given great weight. No authority is cited for this proposition. When a child is of appropriate age, we see no reason to disregard his wishes in an adoption case while giving it weight in a custody case. *Cf. Horen v. Horen,* 73 Wn.2d 455, 438 P.2d 857 (1968). Because no authority is cited for the rule contended for by the father, we will not consider it further. *DeHeer v. Seattle Post–Intelligencer,* 60 Wn.2d 122, 372 P.2d 193 (1962).

The assignment of error directed to finding of fact No. 6 that the father had not attempted to enforce his visitation rights through court action, is without merit. The father's own counsel stated that enforcement papers were prepared by her on February 7, 1977, and sent to Everett that day. The adoption proceedings were signed and filed in Clallam County on February 9, 1977. Clearly, the actions were substantially simultaneous and there is no evidence that any other enforcement efforts were attempted despite the clear evidence that the father had known of the son's presence in Port Angeles since at least May 29, 1975. Finding of fact No. 6 is supported by substantial evidence.

The father's argument in conjunction with the foregoing finding of fact that he had good reason for not seeking court assistance at a prior time, is best considered in conjunction with the asserted error in finding that the father had abandoned his son.

RCW 26.32.040 provides in part:

No consent for the adoption of a minor shall be required as follows:

. . .

(4) From a parent who has been found by a court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child under circumstances showing a wilful substantial lack of regard for parental obligations;

*In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973) establishes that before a parent can be permanently deprived of the right to care, custody and control of a minor child, it must be shown by clear, cogent and convincing evidence that the welfare of the child will be best served by such an order. That decision further holds that if the rights of the parent and child are in conflict, the welfare of the minor child must prevail. In his oral opinion, the trial judge made reference to *Sego* indicating his awareness of its requirements. Although *Sego* was not an adoption case, but rather a deprivation case against the parent having actual and legal custody, we will assume for the purpose of this decision

that the requirements for dispensing with consent are the same. *See In re Adoption of Webb,* 14 Wn. App. 651, 544 P.2d 130 (1975); *cf. In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969), which suggests that a parent merely seeking to preserve his status as a legal parent of a natural child is in a less favored position than a parent who is attempting to gain actual custody from one having no parental status.

The evidence here was in substantial conflict and the trial court chose to believe that offered by the mother and son where it conflicted with that of the father. There is substantial evidence that the father totally neglected his support obligation after October 1972, although he claims assets worth $500,000; that he has not visited the child since Christmas of 1973; that he has not attempted to enforce his visiting rights until the adoption proceeding was undertaken; that he has made little or no inquiry concerning the progress of the boy and his welfare; that the boy is well integrated into the new family home and affirmatively wants to be adopted; and that the boy does not much care for his natural father. These facts, and the general circumstances of the boy as disclosed by the record, support the conclusion that the welfare of the child will be served by permitting the adoption.

The father seeks to explain his apparent neglect by asserting that he was not aware of the whereabouts of the boy from early 1974, when the mother married and moved to Port Angeles, until some time in 1975. He states that when he found where the boy was, the mother asked him not to visit for awhile until the boy settled into the new family situation. The mother concedes that there was some such discussion, but that the period of adjustment was not intended to be long. The trial judge made no specific finding on this point, but a reading of the testimony makes it clear that thereafter, in the father's asserted attempts to visit, which may have been as few as two, he did so in an abrasive and harassing manner without attempting to give even the 1–hour notice required by the decree. Indeed, on

one occasion in 1975, he called the mother and, although he had not seen the boy since 1973, asked the mother to put the boy on the ferry at Kingston to be met by the father at Edmonds so that the father could take him east for a month. Understandably, the request was refused and if it be that it was refused with some heat, that too is understandable.

On the record before us, the father has plainly failed to discharge the minimum obligations as set forth in the case of *In re Adoption of Lybbert, supra* at 674, which have been expressed as follows:

> (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

We recognize that the noncustodial parent has minimal opportunity to control items 4 and 5 and somewhat limited opportunity to control item 3, but clearly, items 1 and 2 are within his control and item 3 can be substantially affected by supplying adequate support money which clearly has not been done in the present case for a long period of time.

On much less aggravated facts involving a shorter period of time, it was held in the case of *In re Webb, supra,* that the trial court's discretion was not abused in ruling that the father had abandoned his daughter, and we reach the same conclusion in this case. The trial court had the parties before it and was in the best position to analyze the factors which go into the ultimate conclusion, that the requirements of RCW 26.32.040(4) have been satisfied.

Insofar as the clear, cogent and convincing test is concerned, we note that even on the cold record, the testimony of the father is so replete with sweeping generalized assertions, so vague as to specifics and so lacking in solid proof, either documentary or by corroborating testimony from other persons to whom reference is made, that even without our having the benefit of seeing and hearing the witnesses,

we have no hesitancy in saying that by comparison, the mother's evidence meets and exceeds the required level of proof.

The judgment of the trial court is affirmed.

PEARSON, C.J., and PETRIE, J., concur.