[No. 4047–II. Division Two. December 12, 1980.]

*In the Matter of the Adoption of*
ROBERT SCOTT TRYON, ET AL.

*Clinton J. Henderson,* for appellant.

*William R. Garland,* for respondent.

PETRIE, J.—Robert Tryon appeals from a decree of adoption entered simultaneously with an order dispensing with the requirement of his consent as natural father to the adoption of his children. The sole issue is whether appellant "deserted or abandoned" his children under former RCW 26.32.040(4), the statutory authority which eliminates the need for obtaining his consent. We hold he did not desert or abandon his children. Accordingly, we vacate the decree and reverse the order.

In 1963 Robert Tryon married Ellen Marie (Tryon) Farley. The couple had four children currently ranging in age from 6 to 16. In 1975 Robert Tryon entered into a polygamous marriage while living in Utah. The resulting "family" consisted of Robert and Ellen Tryon and two "sister wives" (Peggy and Jenifer Sanderson), the Tryons' four natural children, and three children of the additional "wives" from prior relationships.

In 1976, after the "family" had moved to Idaho, Ellen separated from her husband and moved to Bremerton with all but her oldest child. She filed for and obtained a dissolution of her marriage in December of that year. The dissolution decree awarded Ellen custody of the four children, established Robert's child support obligations, and severely restricted his visitation privileges. In 1977, Ellen married James Farley. The couple currently reside in Auburn, Washington along with Ellen's four children.

At the time of the dissolution, Robert Tryon was living in Orofino, Idaho, where he continues to reside. In August

1977, Robert legally married Peggy Sanderson. Subsequent to that time he terminated his polygamous relationship with Jenifer Sanderson. Since his separation from Ellen, Robert has corresponded regularly with his children, repeatedly expressing his desire to be reunited with them. He has visited his children on at least five occasions during the period between his separation and the adoption proceedings. In the past, however, he has chosen to use his income to support his polygamous family (including a child he fathered with Jenifer in 1978) rather than pay child support obligations for his first four children. At the time this appeal was filed these obligations were substantially in arrears.[1]

In July 1978, James Farley joined with Ellen (Tryon) Farley in petitioning the Superior Court for Kitsap County to adopt Ellen's four children. Robert Tryon sought to preserve his status as the legal parent of his natural children. Following a hearing held pursuant to RCW 26.32.080, the trial court concluded Robert had abandoned his children under RCW 26.32.040(4). Accordingly, the court entered an order dispensing with the requirement of his consent to the adoption and entered the decree of adoption sought by Mr. Farley. This appeal ensued.

RCW 26.32.040, in effect at the time of this action, provides in part:

> No consent for the adoption of a minor shall be required as follows:
>
> . . .
>
> (4) From a parent who has been found by a court of competent jurisdiction, upon notice as herein provided to such parent, to have deserted or abandoned such child under circumstances showing a wilful substantial lack of regard for *parental obligations*[.]

(Italics ours.) Minimal "parental obligations" have been defined as follows:

---

[1]During the pendency of this appeal, Mr. Tryon satisfied the judgment entered against him on April 3, 1980 for this arrearage in child support.

(1) express love and affection for the child; (2) express personal concern over the health, education and general well–being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969).

 Courts zealously safeguard the integrity of the natural relationship between parent and child. Former RCW 26.32.040(4) interferes with this relationship and must, therefore, be strictly construed. *In re Adoption of Lybbert, supra.* Desertion or abandonment must be proved by clear, cogent, and convincing evidence. *In re Adoption of Webb,* 14 Wn. App. 651, 544 P.2d 130 (1975); *accord, In re Sego,* 82 Wn.2d 736, 513 P.2d 831 (1973). Abandonment requires a finding of an intention, either expressed or implied, on the part of the parent to permanently relinquish all claims to his children. *In re Hagen,* 21 Wn. App. 169, 584 P.2d 446 (1978). *See In re Adoption of Gargan,* 21 Wn. App. 423, 587 P.2d 545 (1978).[2] Mr. Tryon does not challenge the specific factual findings made by the trial court. Rather, he challenges the legal conclusion the court drew from these facts. Thus, the crucial question is whether his conduct as reflected in the court's findings constituted desertion or abandonment under RCW 26.32.040(4). *See In re Adoption of Webb, supra* at 656.

The findings demonstrate that although Mr. Tryon was not providing financial support to his children, he expressed concern about their well being. He wrote them on a regular basis. Prior to Ellen's obtaining an unlisted number, he occasionally spoke with them by telephone. He sent the children gifts, though not always at the proper time for the particular occasion. His visits with the children were

---

[2]Although *In re Hagen,* 21 Wn. App. 169, 584 P.2d 446 (1978) was a parent deprivation case under RCW 13.34, *In re Adoption of Gargan,* 21 Wn. App. 423, 587 P.2d 545 (1978), noted that the requirements for dispensing with consent are the same in deprivation cases as in adoption cases.

infrequent but not inconsistent with the limitations placed on those visits by the dissolution decree and the distance involved in traveling from his residence to theirs.

In his memorandum opinion, the trial judge found Mr. Tryon's "social and religious influences on the children have all been of a negative quality" and the finding of fact declares Mr. Tryon has "fostered social and religious teaching which are of a negative nature to a substantial degree." Characterization of specific social or religious influences as negative or positive implies a judicial pronouncement of a pre–existing standard upon which to measure those influences. The judicial process has been somewhat inept in identifying that standard. In any event, the noncustodial parent (in this case Mr. Tryon) usually has minimal opportunity to fulfill or control the parental duty of furnishing social and religious guidance, as articulated in *In re Adoption of Lybbert, supra. See In re Adoption of Gargan, supra* at 429. Here, Mr. Tryon had been ordered in the dissolution decree not to discuss with his children the subject of plural marriages or communal living. The substance of his communications with his children indicates he obeyed this court order. Indeed, he appears to have abandoned those beliefs. He should not be penalized for his former religious beliefs or for his inability to more significantly influence his children's social and religious upbringing.

The record as a whole indicates that the controlling factor in the trial court's determination of abandonment was Mr. Tryon's conscious decision to support his polygamous family to the detriment of his own children. Nonsupport alone, however, is an insufficient basis to support a conclusion of abandonment. In *In re Miller,* 86 Wn.2d 712, 717, 548 P.2d 542 (1976), the court stated:

> The distinction between abandonment and nonsupport is crucial. They are not synonymous; nonsupport in and of itself does not constitute abandonment. The term "abandonment" means the voluntary failure or neglect *to care*

*for as well as the failure to support, i.e.,* furnish necessary food, clothing, and shelter, a child. The duty to "care for" includes the parental obligation to train, supervise, and guide a child's growth and development. Nonsupport, on the other hand, connotes a failure to contribute to the maintenance and material well–being of a child.

(Citations omitted.)

We recognize the trial court, which has the parties personally present before it, is in a better position than we to analyze the testimony of the several parties as it pertains to the ultimate conclusion of desertion or abandonment. *In re Adoption of Webb, supra* at 657. Nevertheless, we hold the totality of Mr. Tryon's actions as set forth in the trial court's unchallenged findings fail to establish the statutory requirement of abandonment, *i.e.,* conduct "under circumstances showing a wilful substantial lack of regard for parental obligations". RCW 26.32.040(4). There is a startling lack of clear, cogent, and convincing evidence of factors other than the demonstrated nonsupport to indicate an intention on the part of Mr. Tryon to permanently relinquish all claims to his children. *See In re Hagen, supra.*

We hasten to note that the court in *In re Adoption of Lybbert, supra* at 674, after articulating the minimal "parental obligations," added:

[T]his court has for many years adhered to the rule that the dominant consideration is the moral, intellectual and material welfare of the child or children, and that the parental relationship itself must be subordinate to these considerations.

This language, if taken literally and considered in a vacuum, appears to commingle the statutory test for abandonment contained in RCW 26.32.040(4) with the "best interests of the child" test uniformly applied in permanent deprivation cases (*see In re Tarango,* 23 Wn. App. 126, 130, 595 P.2d 552 (1979)) and child custody cases (RCW 26.09-.190). Although the moral, intellectual, and material welfare of the children are legitimate concerns, the test for abandonment is not a balancing between these factors and the

rights of the natural parent. The language of RCW 26.32-.040(4) is clear. For purposes of an adoption, however, the natural parent will only be deemed to have deserted or abandoned his children when he has intentionally pursued a course of conduct "showing a wilful substantial lack of regard for parental obligations".

Under the circumstances of this case, we hold Mr. Tryon did not desert or abandon his children. We do not condone his lack of financial support. Nevertheless, it was error for the trial court to dispense with the requirement that he consent to the adoption of his children. Accordingly, we reverse the order dispensing with Mr. Tryon's consent and vacate the decree of adoption.

PEARSON, A.C.J., and PETRICH, J., concur.

Reconsideration denied January 14, 1981.