[No. 11732-7-I. Division One. August 1, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. TERRI L. STEINBACH, *Appellant.*

*Julie Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Linda Jacke, Deputy,* for respondent.

CALLOW, J.—The defendant, Terri L. Steinbach, appeals the judgment of the King County Superior Court, Juvenile Department, convicting her of second degree burglary, alleging that there was insufficient evidence to establish guilt beyond a reasonable doubt. We are asked whether a minor child who has been temporarily removed from her parental home and placed in an alternative residence pursuant to a court ordered alternative residential placement can be convicted of burglarizing the parental home.

Since April of 1981, Terri L. Steinbach, a minor child, had been living with her natural mother, Verna Garcia, and her mother's husband at 11063 18th S.W., Seattle, Washington. On October 19, 1981, Terri Steinbach filed a Petition To Approve Alternative Residential Placement (ARP) with the juvenile court, asking to be placed outside the homes of either of her natural parents. This petition was approved by the juvenile court and on February 26, 1982, Steinbach was placed by juvenile court order in an alternative residence. Because of her opposition to the child's placement outside the home, her mother was not required to pay support.

On March 2, 1982, Terri Steinbach forcibly entered her mother's residence at 11063 18th S.W. through a boarded-up window. She was accompanied by three or four young men. The group was observed removing some items from the house. Three rifles and other items of personal property

owned by Steinbach's mother and her mother's husband which had been kept in the house were subsequently found by the police in the alley behind the house.

Steinbach was charged by amended information with second degree burglary pursuant to RCW 9A.52.030 and with possession of stolen property in the second degree pursuant to RCW 9A.56.160(1)(e) and 9A.56.140(1). A fact-finding hearing was conducted on April 28, 1982. The trial court entered findings which stated in part:

1.

Terri L. Steinback [*sic*] was born on 1 September 1967.

2.

That Verna Garcia who lives at 11063–18th Southwest, Seattle, is Terri's natural mother.

3.

That Terri has also lived at 11063–18th Southwest, Seattle, since April 1981.

4.

That on 2 March 1982 Terri did enter the residence located at 11063–18th Southwest.

5.

That Verna Garcia had advised Terri some two weeks before not to enter the residence unless she was visiting her parents.

8.

That Terri did not have permission to enter her residence at 11063–18th Southwest.

9.

That Terri entered her residence at 11063–18th Southwest with the intent to commit a crime inside by removing a board from covering a window in the back of the residence.

The trial court found the defendant guilty of one count of second degree burglary. She appeals.

RCW 9A.52.030 states in part:

A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, *he enters or remains unlawfully* in a building other than a vehicle.

(Italics ours.) RCW 9A.52.010(3) states that "[a] person 'enters or remains unlawfully' in or upon premises when he

is not then licensed, invited, or otherwise privileged to so enter or remain." Steinbach does not dispute the trial court's finding of fact that she entered her mother's residence with the intent to commit a crime inside. She contends there was insufficient evidence to establish that she was there "unlawfully."

 The proper test for determining if there is sufficient evidence to support guilt in a criminal case is "whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*'" *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)). Steinbach asserts that the State produced no court order which severely limited or terminated the parent–child relationship between her and her mother. She contends that she had both the right and privilege to claim entry and shelter in her mother's residence and, consequently, could not enter or remain "unlawfully."

Steinbach's contention that a minor child has both the right and the privilege to claim entry and shelter in the residence of her parents is based upon *In re Adoption of Lybbert,* 75 Wn.2d 671, 453 P.2d 650 (1969).

> The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well–being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

75 Wn.2d at 674. *See In re Adoption of Tryon,* 27 Wn. App. 842, 844–45, 621 P.2d 775 (1980).

 However, Steinbach herself had filed an ARP pursuant to RCW 13.32A.150 and by court order was placed in a residence other than her mother's home prior to the burglary. On January 28, 1982, the trial court entered the fol-

lowing order:

> Alternative placement is changed as follows: Temporary placement with mother pending foster care placement. . . . When foster care home is found, Terri shall reside there and abide by all rules and regulations.

She was placed in another home by court order on February 26, 1982. This alternative residential placement shifted to the State Steinbach's mother's obligation to provide a domicile for her daughter as well as Steinbach's corresponding right and privilege to reside at her mother's residence.

Under RCW 13.32A, Procedures for Families in Conflict, a child or parent may file with the juvenile court a petition to approve an alternative residential placement for the child outside the parent's home. RCW 13.32A.150. The juvenile court may approve the petition only if, following a factfinding hearing, it is established by a preponderance of the evidence that:

> (a) The petition is not capricious;
> (b) The petitioner, if a parent or the child, has made a reasonable effort to resolve the conflict; and
> (c) The conflict which exists cannot be resolved by delivery of services to the family during continued placement of the child in the parental home.

RCW 13.32A.170(1). This intrusion upon the parental constitutional right to the care, custody, and companionship of the child is justified by the State's parens patriae interest in protecting the physical and mental health of the child.

> It is now well established that when parental actions or decisions seriously conflict with the physical or mental health of the child, the State has a parens patriae right and responsibility to intervene to protect the child.

*In re Sumey,* 94 Wn.2d 757, 762, 621 P.2d 108 (1980).

Steinbach correctly asserts that unlike a dependency adjudication or termination of parental rights under RCW 13.34 an alternative residential placement does not result in the transfer of any legal rights and duties to the custodian of the child. Nor can such placement serve as a basis for a subsequent termination of parental rights. *In re Sumey,*

*supra* at 763. Such a placement is only temporary with the ultimate goal being to resolve the family conflict and reunite the family. RCW 13.32A.170(2). This is in accord with the legislative determination that "the family unit is the fundamental resource of American life which should be nurtured and that it should remain intact in the absence of compelling evidence to the contrary." RCW 13.32A.010.

An alternative residential placement completely, though temporarily, removes the minor child from the parental home and, in effect, establishes a new legal residence for the child to better achieve the goal of reconciliation. In fact, the out–of–home placement "is predicated on the existence of family conflict of sufficient magnitude that the parents and child are unable to live in the same home even with the assistance of counseling or other rehabilitative social services." *In re Sumey, supra* at 761. A minor child thus placed in such an alternative residence does not have the license or privilege to continue to treat the parental home as his or her own residence until the child is returned to the parental home pursuant to RCW 13.32A.190.[1]

In *In re G.L.*, 73 Ill. App. 3d 467, 469, 391 N.E.2d 1108 (1979), the minor child was charged with burglarizing his

---

[1]RCW 13.32A.190 states:

"(1) Upon making a dispositional order under RCW 13.32A.180, the court shall schedule the matter on the calendar for review within three months . . .

"(2) At the review hearing, the court shall approve or disapprove the continuation of the dispositional plan in accordance with the goal of resolving the conflict and reuniting the family which governed the initial approval. *The court is authorized to discontinue the placement and order that the child return home if the court has reasonable grounds to believe that the parents have displayed concerted efforts to utilize services and resolve the conflict and the court has reason to believe that the child's refusal to return home is capricious.* If out–of–home placement is continued, the court may modify the dispositional plan.

"*Out–of–home placement may not be continued past one hundred eighty days from the day the review hearing commenced. The court shall order that the child return to the home of the parent at the expiration of the placement. If continued out–of–home placement is disapproved, the court shall enter an order requiring that the child return to the home of the child's parent.*" (Italics ours.)

parents' home pursuant to Ill. Rev. Stat. ch. 38, § 19–1 (1977), which stated, in part:

> A person commits burglary when without authority he knowingly enters . . . a building . . . with intent to commit therein a felony or theft.

Custody of the child had previously been transferred by court order from his parents to the director of a drug rehabilitation program and the child was no longer living at home. In rejecting the child's contention that a child has common authority to enter the family home unless clearly shown to the contrary, the court stated:

> Parents do have a duty to provide shelter for a minor son, but once legal custody is placed outside the home, that duty is reduced to a financial responsibility. Clearly, parents have a right of possession of their home superior to that of the child. The law does not require them to submit to the adolescent tyranny of a drug addict son who seeks to enter the home for the purpose of committing a theft.

*In re G.L., supra* at 470.

Similarly, Steinbach was legally removed from her mother's residence pursuant to a court order. She was not deprived of her right to an adequate domicile but was simply placed in a residence separate and apart from that of her mother's pursuant to the State's parens patriae power. She cannot now claim that she had both the right and privilege to claim entry and shelter in her mother's residence by virtue of the parent–child relationship.[2]

Further, there is no dispute that she entered the residence with the intent to commit a crime by forcibly removing a board from a window in the back of the residence. The elements which were required to be proven were (a) an

---

[2]Relationships severed by court order may deprive a family member who previously had a right of entry of that right, making entry unlawful and a commission of burglary. *See State v. Cladd,* 382 So. 2d 840 (Fla. Dist. Ct. App. 1980); *Ex Parte Davis,* 542 S.W.2d 192 (Tex. Crim. App. 1976).

"unlawful" entry in a building with (b) an intent to commit a crime therein. RCW 9A.52.030; *see State v. Rio,* 38 Wn.2d 446, 230 P.2d 308, *cert. denied,* 342 U.S. 867 (1951). These elements were proven and establish that Steinbach entered and remained "unlawfully" in her mother's residence. *State v. Gear,* 30 Wn. App. 307, 633 P.2d 930 (1981) rejected the defendant's contention that the State's failure to elicit express testimony that he was not in fact an employee who was present in the building with the permission of the owners was tantamount to failure to prove that his entering or remaining therein was "unlawful". The court stated:

> Defendant's entering or remaining in the building was "unlawful" because of his apparent intent to commit a crime therein.

*State v. Gear, supra* at 310.

The evidence established that Steinbach had been placed by juvenile court order in the residence of a third person pursuant to Steinbach's filing of an ARP. This out–of–home placement occurred prior to March 2, 1982, the date of the burglary. The testimony indicated that Steinbach was not licensed, privileged, or invited to enter her mother's residence on the day of the burglary. Steinbach's mother had told her 2 weeks prior to the burglary that because of the ARP court order she could not remain at the mother's residence at any time or reside there and could only visit if she called first. The mother further testified that the day of the burglary was one of the times Steinbach was not to be there. In addition, it was clear that the defendant knew she no longer resided with her mother; the arresting officer testified that Steinbach had told him she lived with friends and no longer lived with her mother. Finally, Steinbach entered the residence with the intent to commit a crime therein. This was sufficient evidence by which a rational trier of fact could find beyond a reasonable doubt that Steinbach was not licensed, invited, or otherwise privileged to enter and remain in her mother's residence on the date of the burglary. *State v. Green, supra.*

The judgment and sentence is affirmed.

DURHAM, A.C.J., and SWANSON, J., concur.

Reconsideration denied September 7, 1983.

Review granted by Supreme Court November 4, 1983.