[No. 56499-0. En Banc. April 12, 1990.]

*In the Matter of* H.J.P.

ALAN ERWIN PSATY, *Appellant,* v. GWENDOLYN RACHEL PSATY, *Respondent.*

*Law Offices of Jay V. White,* by *Jay V. White* and *Kathleen N. Bartleson,* for appellant.

*Beckwith & Collins,* by *John Chen Beckwith,* for respondent.

DORE, J.—A natural father whose parental rights were terminated under the state adoption statute, RCW 26.33-.120(1), appealed here alleging that the statute violated his Fourteenth Amendment rights of due process and equal protection, and that the trial court's determination was not supported by clear, cogent, and convincing evidence. We hold that the adoption statute is constitutional, and that the evidence supports the trial court's decision. We affirm.

## FACTS

The respondent, Gwendolyn Francis, and the appellant, Alan Psaty, were married in New York in 1974. Their son,

H, was born the following year. The marriage was dissolved in Seattle in June of 1978. The dissolution decree awarded Gwendolyn Francis custody of H. It also granted Psaty liberal visitation privileges, ordered him to maintain a major–medical insurance policy for his son and to pay child support payments of $150 per month; Psaty was also required to pay a temporary child support payment of $1,824 and a judgment of $1,250 for failure to provide complete discovery. Exhibits 1, 2. Following the divorce, Gwendolyn Francis returned to using her maiden name, Buttnick, and for several years the son has also used that surname.

In 1985, Gwendolyn Francis married Dr. Bruce Francis. In October 1986, Francis' lawyer sent a letter to Psaty proposing that Dr. Francis be permitted to adopt H. Failing to receive a favorable response, Gwendolyn Francis, in January 1987, filed a petition to terminate the parental rights of Psaty pursuant to RCW 26.33.120(1).

At trial, the parties attempted to document the communication between Psaty and H during the more than 9 years that had elapsed from the entry of the divorce decree to the commencement of the present action. The parties disputed the number of times Psaty visited H in Seattle. They agreed that Psaty made trips to visit H in 1979 and 1982, and that during each visit Psaty paid $1,000 in child support and purchased toys for H. Psaty contended that he and his current wife also visited H in 1980. Report of Proceedings, at 284–86. Francis asserted that only two visits were made, and she and her brother testified that Psaty and his wife's visit occurred in 1982.

The parties testified regarding telephone communications. According to Francis, from the time of the divorce until October 1986, Psaty made an average of two telephone calls per year to H. Psaty testified that he made approximately 5 to 10 calls per year and that the ratio of attempted calls to reaching H was approximately 3 to 1. Psaty presented telephone company records documenting telephone calls made in 1986, prior to the receipt of the letter from Francis' lawyer requesting Psaty to consent to

Dr. Francis' requested adoption of H. The records showed that Psaty made four telephone calls to H which averaged 3 minutes in duration, and that he had a 9–minute conversation with H on November 9, 1986. After that, Francis barred further telephone calls.

Evidence was offered concerning written communication between Psaty and H. Psaty sent H one postcard in 1979, a second postcard in 1986, 20 letters mailed between June and October of 1987, and a birthday card containing a $100 check in August 1987. Exhibits 3–5. In the first postcard, Psaty referred to toys he sent H for "Chanukah" in 1978. Francis testified that a toy was received, but it had been sent by Psaty's sister.

The dissolution decree required Psaty to maintain medical insurance for H and to pay monthly child support. Psaty never obtained medical insurance for H. From the time of the divorce in 1978 until June 1987, Psaty failed to make the required $150 monthly child support payments. Psaty did tender $1,000 child support payments during his visits to Seattle in 1979 and 1982. Beginning in June 1987, Psaty made six consecutive $150 child support payments. Francis did not cash those checks nor the $100 birthday check H received in August 1987. Psaty testified that financially he could afford to pay the child support, but he chose not to. Prior to trial, Psaty paid back support of $16,850 in trust to his lawyer, but he conditioned payment of support upon Francis' dismissal of the termination petition. Report of Proceedings, at 336–37.

The trial court ordered the termination of Psaty's parental rights. Psaty appealed alleging that RCW 26.33.120 permitting stepparent adoption through termination of the natural parent's parental rights, without that parent's consent, violated his Fourteenth Amendment rights of due process and equal protection, and that the trial court's decision was not supported by the evidence. The Court of Appeals, pursuant to RCW 2.06.030(2), certified the appeal to this court.

ANALYSIS

On appeal, Psaty challenges the constitutionality of RCW 26.33.120(1) which permits termination of the parental rights of a natural parent without consent. According to Psaty, the standard set forth in the statute for determining when a court should terminate parental rights does not satisfy the due process requirements articulated by the United States Supreme Court in *Santosky v. Kramer,* 455 U.S. 745, 71 L. Ed. 2d 599, 102 S. Ct. 1388 (1982). Psaty claims that parental rights may be terminated under RCW 26.33-.120(1) only upon a showing of parental unfitness. He also contends that the current statutory standard violates his right of equal protection of the laws as the standard for termination of parental rights in an adoption situation differs substantially from that required under the dependency statutes.

CONSTITUTIONAL REQUIREMENTS
OF SANTOSKY V. KRAMER

In *Santosky v. Kramer,* the United States Supreme Court addressed a challenge to a provision of the New York Family Court Act which permitted the State to terminate, over parental objections, the rights of parents in their natural child upon a finding that the child was "'permanently neglected.'"[1] The New York law required that only a "'fair preponderance of the evidence'" support the court's finding. *Santosky,* 455 U.S. at 747. The petitioners, parents whose parental rights had been terminated pursuant to the statute, asserted that the standard of proof called for in the statute violated their Fourteenth Amendment right of due process. The Court agreed.

Initially, the Court noted that natural parents possess a fundamental liberty interest in the care, custody and management of their child protected by the Fourteenth Amendment. *Santosky,* 455 U.S. at 753. Before the State may destroy the "weakened familial bonds, it must provide

[1]The statute at issue in *Santosky* is similar to Washington's statute permitting termination of the parental rights of dependent children. *See* RCW 13.34.180.

the parents with fundamentally fair procedures." *Santosky,* 455 U.S. at 754.

Determining what process was due petitioners, the Court balanced the "'three distinct factors'" set forth in *Mathews v. Eldridge,* 424 U.S. 319, 335, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976): "the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Santosky,* 455 U.S. at 754. Applying those factors to the New York statute, the Court held that the fair preponderance of the evidence standard violated the due process clause of the Fourteenth Amendment. *Santosky,* 455 U.S. at 758. Summarizing its analysis of the statute, the Court concluded

> In parental rights termination proceedings, the private interest affected is commanding; the risk of error from using a preponderance standard is substantial; and the countervailing governmental interest favoring that standard is comparatively slight. Evaluation of the three *Eldridge* factors compels the conclusion that use of a "fair preponderance of the evidence" standard in such proceedings is inconsistent with due process.

*Santosky,* 455 U.S. at 758. Striking down the standard of proof set forth in the New York statute, the Court held that before a state could sever the parental rights of parents in their child, due process required that the State support its allegations by a minimum of clear and convincing evidence. *Santosky,* 455 U.S. at 769–70.

In its analysis of the private interest affected by the statute, the Court noted that victory for the State under the statute "entail[ed] a judicial determination that the parents are unfit to raise their own children." *Santosky,* 455 U.S. at 760. Discussing the family court judge's express refusal to terminate the petitioners' parental rights on a "'non–statutory, no–fault basis . . .'", the Court stated

> Nor is it clear that the State constitutionally could terminate a parent's rights *without* showing parental unfitness. See *Quilloin* v. *Walcott,* 434 U. S. 246, 255 [54 L. Ed. 2d 511, 98 S. Ct. 549] (1978) ("We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents

and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest,'" quoting *Smith* v. *Organization of Foster Families*, 431 U. S. 816, 862–863 [53 L. Ed. 2d 14, 97 S. Ct. 2094] (1977) (Stewart, J., concurring in judgment)).

*Santosky*, 455 U.S. at 760 n.10.

SUBSTANTIVE REQUIREMENTS OF RCW 26.33.120(1)

In 1984, the Washington State Legislature replaced the then existing adoption code, RCW 26.32, with a reorganized code, RCW 26.33, effective January 1, 1985. The Legislature sought to retain the same features of the old code while eliminating duplicative or contradictory provisions. This is the first reported case utilizing RCW 26.33.120(1) to terminate parental rights. That statute provides:

the parent–child relationship of a parent may be terminated upon a showing *by clear, cogent, and convincing evidence* that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

(Italics ours.) The language of the current statute differs in several respects from its predecessor, former RCW 26.32-.056 (1979), which stated:

In the case of a petition filed by a parent and joined by the petitioner's spouse seeking termination with respect to the other parent, and such other parent appears and contests the termination, *the court shall determine whether such parent has deserted or abandoned the child under circumstances showing a wilful substantial lack of regard for parental obligations.* If the court makes such a finding, it shall terminate his rights to the child.

(Italics ours.) In revising the stepparent adoption section, the Legislature explicitly stated that the termination decision must be supported by "clear, cogent, and convincing evidence".[2] In addition, the new provision omitted the terms "deserted", "abandoned" and "wilful." Appellant

---

[2]The Legislature's addition of the "clear, cogent, and convincing evidence" standard merely codified the burden of proof that this court determined appropriate to terminate the parental rights of a natural parent. *See In re Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973) ("clear, cogent and convincing evidence is

argues that the Legislature's deletion of those terms altered the standard for determining when to terminate the parental rights of a natural parent rendering the statute insufficient to meet the requirements of due process.

A review of the legislative history, however, indicates that the Legislature intended that the standard developed under former RCW 26.32.056 continues to apply despite the revision of the statutory language. The Legislature did not explain why it deleted those terms; however, a memorandum of January 3, 1983, from the House Judiciary Committee discussing the bill gives us an explanation.

> The standards for termination of parental rights are established and made the same for both parents and alleged fathers. The burden of proof is not currently set forth in the adoption statute. With respect to a parent who has established paternity, state and federal courts require proof by clear, cogent, and convincing evidence that a parent is unfit to rear children before parental rights may be terminated. . . . *This bill sets the standard of proof to terminate parental rights as clear, cogent, and convincing evidence that the parent failed to perform parental duties showing a substantial lack of regard for parental obligations.*

(Italics ours.) A memorandum from the counsel for the House Judiciary Committee on October 6, 1983, summarizing the changes in the adoption code stated:

> Section 9. This section combines in one place the provisions for terminating the parent–child relationship. The standard for a parent is similar to that set in the juvenile code. RCW 13.34-.030, 13.34.180.

Although section 9 relates to termination of the parental rights of alleged fathers, as stated above, the new chapter made the standards for terminating the rights of parents and alleged fathers the same. The juvenile code sections cited relate to the termination of parental rights of dependent children.

Reviewing the termination of parental rights under the dependency statute, RCW 13.34.180, the Court of Appeals recently held that

---

necessary to sustain an order permanently depriving a parent of the care, custody and control of his children.").

[t]he termination decision must be predicated upon present parental unfitness. *In re Moseley,* 34 Wn. App. 179, 180–87 & n.4, 660 P.2d 315, *review denied,* 99 Wn.2d 1018 (1983).

While the Colorado parental rights termination statute explicitly requires a finding of parental unfitness, *In re A.M.D.* [648 P.2d 625 (Colo. 1982)], *supra* at 637, Washington's statute implicitly requires such a finding. Even after the entry of a dependency order, if a parent is not shown to be unfit at the time of the parental rights termination proceeding, termination is improper.

*Krause v. Catholic Comm'ty Servs.,* 47 Wn. App. 734, 742, 737 P.2d 280, *review denied,* 108 Wn.2d 1035 (1987). In *In re Adoption of Tryon,* 27 Wn. App. 842, 621 P.2d 775 (1980), the court addressed a petition for termination of parental rights brought under an earlier version of the adoption code requiring a showing of parental desertion or abandonment. When setting forth the proof required to establish abandonment, the court cited to an earlier case brought under RCW 13.34.180 and noted

Although *In re Hagen,* 21 Wn. App. 169, 584 P.2d 446 (1978) was a parent deprivation case under RCW 13.34, *In re Adoption of Gargan,* 21 Wn. App. 423, 587 P.2d 545 (1978), noted that the requirements for dispensing with consent are the same in deprivation cases as in adoption cases.

*In re Adoption of Tryon,* 27 Wn. App. at 845 n.2.

Those cases illustrate that the courts based their decision of whether to terminate parental rights upon a finding of parental unfitness, regardless of which statutory scheme was employed. The language of former RCW 26.32.056 established that standard by requiring the court to find that the parent "deserted or abandoned the child under circumstances showing a wilful substantial lack of regard for parental obligations." In all of the former RCW 26.32-.056 parental rights termination cases reported, the court made a specific finding on the issue of abandonment or desertion by the parent.

■■ Aware of the case law developed under former RCW 26.32.056, the Legislature drafted a new provision governing the termination of parental rights in adoption cases. As evidenced by the legislative history quoted above,

the House Judiciary Committee was concerned with setting forth the requisite standard of proof within the text of the statute. Although the Committee deleted the operative language used by the courts to guide their termination decisions, the intent of the Legislature was to retain the same substantive standard that had been developed under the previous statute and case law. Accordingly, we hold that under RCW 26.33.120(1), in order for the court to terminate the parental rights of a nonconsenting parent, it must find parental unfitness on the part of the nonconsenting parent. Parental unfitness is established by showing that the nonconsenting parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations . . .".

TERMINATION OF PARENTAL RIGHTS
UNDER THE ADOPTION CODE

■ This court stated that when terminating parental rights under former RCW 26.32.056, the lower court was to consider two questions:

(1) jurisdictional—whether the biological parent, by behavior, has forfeited all rights in the child, *i.e.*, whether the child has been deserted or abandoned under RCW 26.32.056; and (2) dispositional—whether terminating parental rights would be in the best interests of the child.

*In re Pawling,* 101 Wn.2d 392, 400, 679 P.2d 916 (1984). The court must resolve the jurisdictional issue before it can address the best interests of the child. *In re Adoption of J.D.,* 42 Wn. App. 345, 350, 711 P.2d 368 (1985). The former statute defined abandonment as "'a wilful substantial lack of regard for parental obligations.'" *In re Pawling,* 101 Wn.2d at 397–98. This court established that parental obligations consist of the following attributes:

(1) [E]xpress love and affection for the child; (2) express personal concern over the health, education and general well–being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Adoption of Lybbert,* 75 Wn.2d 671, 674, 453 P.2d 650 (1969); *In re Pawling,* 101 Wn.2d at 398. We hold that in

resolving the jurisdictional question here, under RCW 26.33.120(1), the lower court must determine whether the biological parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations.

## THE TRIAL COURT PROPERLY TERMINATED PSATY'S PARENTAL RIGHTS

Psaty argues that the trial court applied the wrong substantive standard in reaching its decision, and that the court's order terminating his parental rights is not supported by sufficient evidence. According to Psaty, Francis did not establish by clear, cogent, and convincing evidence that he exhibited a substantial lack of regard for his parental obligations. We find no merit in his argument.

■ The adoption code requires that "clear, cogent, and convincing evidence" be presented to sustain an order terminating parental rights, "*i.e., the ultimate fact in issue must be shown by evidence to be 'highly probable'.*" *In re Pawling,* 101 Wn.2d at 399. An appellate court will not disturb the trial court's findings of fact if they are supported by "substantial evidence" which satisfies the "highly probable" test. *In re Sego,* 82 Wn.2d 736, 739, 513 P.2d 831 (1973); *In re Pawling,* 101 Wn.2d at 399.

The trial court explicitly found that the evidence established that Psaty disregarded his parental obligations. In its finding of fact 38, the court determined

38 . . . Furthermore, the evidence establishes that Mr. Psaty has failed to perform his parental duties, that he has had the ability to pay support but failed to do so, that Mr. Psaty has not communicated in a way that effectively, persistently or consistently demonstrated his love and affection for [the child].

Clerk's Papers, at 81. The court concluded

5. The evidence clearly, cogently and convincingly shows that [Mr. Psaty] has failed to perform his parental duties under circumstances showing a substantial lack of regard for his parental obligations and is withholding consent to adoption contrary to the best interest of the child.

Clerk's Papers, at 82. Conclusion of law 5.

## CONCLUSION

We hold that the trial court employed the appropriate substantive standard and that its order terminating the parental rights of the appellant is supported by clear, cogent, and convincing evidence.

We affirm.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.

Reconsideration denied June 14, 1990.