[No. 37476-1-I. Division One. May 27, 1997.]

*In the Matter of the Adoption of* INFANT MCGEE.

---

*Linda J. Nye*; and *Catherine Wright Smith* and *Ed-*

*wards, Sieh, Hathaway, Smith & Goodfriend, P.S.*, for appellants Hess.

*Debra A. Lev* and *Lester & Lev, P.S.*, for appellant Mc-Gee.

*Richard C. Kimberly, Richard M. Sybrandy*, and *Law Offices of Richard C. Kimberly*, for respondent.

BECKER, J. — Infant McGee's prospective adoptive parents and birth mother appeal the trial court's refusal to terminate the parental rights of the birth father. The trial court concluded the birth father was an unfit parent, but had not abandoned his parental duties. Because the court's unchallenged findings amply establish the father's unfitness to parent under the operative language of the statute, and there is no additional requirement to show abandonment or intent to abandon, we reverse and remand for orders permitting the adoption to go forward.

Infant McGee was born August, 1994, to unmarried parents. The baby's mother, Toni McGee, at one time lived with the father, Lane Morrison. Upon finding that she was pregnant, Toni McGee made plans to have the baby placed for adoption. After birth, the baby was placed with the Hess family. They petitioned for the termination of Lane Morrison's parental rights. Morrison resisted, and obtained an order permitting him to have weekly one-hour supervised visitation with the baby. The case proceeded to a five-day trial in June, 1995.

RCW 26.33.120 is the statute governing termination of parental rights in the context of a petition for adoption. It requires petitioners to prove with clear, cogent, and convincing evidence that termination is warranted:

the parent-child relationship of a parent may be terminated

upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.[1]

This standard does not call for a balancing of the factors. The threshold question is "whether the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations." This issue must be resolved by the court before it may consider the best interests of the child.[2]

The trial court made the following findings of fact, all of them undisputed on appeal. During the time Toni McGee lived with Lane Morrison, she endured mental, emotional and physical abuse. Morrison pointed a pistol at her on more than one occasion. Twice, while sober, he forced her to lie down on the floor of the shower while he urinated upon her. Toni McGee moved out. Her contacts with Morrison after that were occasional. It was during one such contact she became pregnant with Infant McGee. Because of threats she had received from Morrison, Toni McGee obtained a no-contact order. Morrison violated the order and threatened to kill Toni McGee. He refused to discuss single co-parenting with her and told her, "you will not live to raise this child without me."

According to expert testimony found credible by the court, Morrison has severe psychological problems. He is unable to physically nurture a child; he has an obsessive need to control; and he has a thought disorder and a dependent personality disorder. He is unaccepting of psychiatric treatment. He is a batterer who has inspired great fear in the child's mother, Toni McGee, and in his other child's mother, Tami Hohmann.

---

[1]RCW 26.33.120(1).

[2]*In re Interests of H.J.P.*, 114 Wn.2d 522, 531, 789 P.2d 96 (1990) (citing *In re Pawling*, 101 Wn.2d 392, 400, 679 P.2d 916 (1984)).

During the time Morrison lived with Tami Hohmann, he was a regular user of cocaine and a "low level" drug dealer. While living with Toni McGee, he continued a pattern of heavy drinking, use of marijuana, and domestic violence.

After he and the mother of his first child separated, Morrison made few child support payments. He did not pursue visitation with that child because he did not want to pay a large amount of back child support. He threatened to kill Tami Hohmann and her parents. Hohman did not seek child support enforcement because of her fear of Morrison.

After a lengthy oral opinion that occupies 26 pages of transcript, the court entered 61 findings of fact. Only three findings of fact reflect favorably on Morrison's parental fitness:

> 2. The Court finds that Lane Morrison initially expressed pleasure when he discovered that Toni McGee was pregnant with his child.
>
> 3. The Court finds that Lane Morrison expressed a desire to parent Infant McGee subsequent to the child's birth, as evidenced by Morrison's successful attempts, through his attorney, to establish visitation with the child, and as evidenced by his testimony during these proceedings that he desires to parent the child.
>
> 4. The Court finds that Lane Morrison appears to enjoy the company of the child during weekly one hour supervised visitations.

The trial court concluded that it would be in the best interest of the child to terminate the relationship, and that Morrison was withholding consent to adoption contrary to the child's best interests. The court also concluded that Morrison was unfit to parent. The court nevertheless denied the termination on the basis that Morrison had not clearly abandoned his parenting duties:

> Even though this Court specifically finds that Lane Morrison is an unfit parent and that he exhibited abusive control

throughout his relationships with Tami Hohmann and Toni McGee, and despite credible expert testimony that he is incapable of nurturing the child and would, in fact, be a danger to the child, and despite credible expert testimony that he is unlikely to change, this Court nevertheless concludes that there is not clear, cogent and convincing evidence that he has abandoned his parenting duties.

The trial court then denied the petition for termination of Morrison's parental rights. From this ruling, the Hesses and Toni McGee both appeal. They contend that the father's desire to be a parent to Infant McGee is insufficient to prevent the termination of his rights, given the factual findings that overwhelmingly establish his parental unfitness. Morrison contends the trial court correctly refused to terminate his parental rights because the petitioners did not prove he intentionally abandoned the child.

Before 1985 the former step-parent adoption statute required the court to determine "whether such parent has deserted or abandoned the child under circumstances showing a willful substantial lack of regard for parental obligations."[3] The present statute, RCW 26.33.120, applies in step-parent adoptions as well as in adoptions by persons other than step-parents. The present statute does not use the terms "deserted," "abandoned," and "willful."

A 1990 decision in a step-parent adoption case, *In re Interests of H.J.P.*,[4] is the only decision interpreting the present statute. A father whose parental rights were terminated under the new statute challenged it, claiming that the deletion of the requirement for a finding of willful desertion or abandonment renders the new statute insufficient to meet the requirements of due process. The Washington Supreme Court rejected his appeal and in do-

---

[3]LAWS OF 1979, Ex. Sess., ch. 165, § 13 (formerly codified at RCW 26.32.056), *repealed by* LAWS OF 1984, ch. 155, § 38. *Cf.* LAWS OF 1979, Ex. Sess., ch. 165, § 12 (formerly codified at RCW 26.32.054; governing termination when the adoption is by a person other than a step-parent), *repealed by* LAWS OF 1984, ch. 155, § 38.

[4]*H.J.P.*, 114 Wn.2d 522.

ing so made clear that the ultimate inquiry required by due process for termination of the child-parent relationship, in all contexts, is parental unfitness.[5] That inquiry derives from the United States Supreme Court decision of *Santosky v. Kramer*:[6]

> Nor is it clear that the State constitutionally could terminate a parent's rights *without* showing parental unfitness. See *Quilloin v. Walcott*, 434 U.S. 246, 255[, 98 S. Ct. 549, 54 L. Ed. 2d 511] (1978) ("We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest,'" quoting *Smith v. Organization of Foster Families*, 431 U.S. 816, 862-863[, 97 S. Ct. 2094, 53 L. Ed. 2d 14] (1977) (Stewart, J., concurring in judgment)).

According to the analysis in *H.J.P.*, the new statute did not change the substantive standard. Under RCW 26.33.120 as well as the statutes it replaced, the prerequisite for terminating the parental rights of a nonconsenting parent is and has been "a finding of parental unfitness, regardless of which statutory scheme was employed."[7] Parental unfitness is also the ultimate inquiry when the State seeks to terminate parental rights under the dependency statutes.[8]

RCW 26.33.120 is consistent with due process because, like the former statutes, it is oriented to parental unfitness. The present statute allows the petitioner to establish parental unfitness without proving that the parent has deserted or abandoned the child. Parental fitness is instead established by showing that the nonconsenting parent "has failed to perform parental duties under circum-

---

[5] *H.J.P.*, 114 Wn.2d 531.

[6] *Santosky v. Kramer*, 455 U.S. 745, 760 n.10, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982).

[7] *H.J.P.*, 114 Wn.2d at 530.

[8] *H.J.P.*, 114 Wn.2d at 530; *see* RCW 13.34.180.

stances showing a substantial lack of regard for his or her parental obligations."[9] Because the statute and *H.J.P.* are clear on this point, Morrison is simply wrong in his argument that a finding of intentional abandonment is essential.

■ Morrison also contends that the necessary finding of disregard for parental obligations cannot be based on the parent's actions before the child was born: "If a child does not exist, parental obligations do not exist." He therefore argues that a court can only examine his conduct as it relates to the particular child whose relationship is at issue. By that standard, Morrison's "bad acts" before he became the parent of Infant McGee would be irrelevant. The undisputed facts pertaining to battering, drug use, obsessive control and inability to parent would be nullified by the court's findings that Morrison now wants to be a parent, has taken steps to visit Infant McGee, and appears to enjoy the visits.

We find no support for this argument in the statute. The statutory scheme anticipates that a contested termination of parental rights may occur without giving that parent the opportunity to make a fresh start at the child's birth. RCW 26.33.100(3) provides that a petition may be filed before the child's birth, and RCW 26.33.110 allows the hearing to be held any time after the child is 48 hours old. Clearly, the statute contemplates that a court may consider a parent's past behavior in determining whether the circumstances under which the parent failed to perform parental duties show a substantial lack of regard for parental obligations.

In the analogous context of termination of parental rights following a dependency action, courts are permitted to consider the parent's performance with children born earlier.[10] We similarly hold that a trial court, determining in an adoption case whether a birth parent "has failed to

---

[9]*H.J.P.*, 114 Wn.2d at 531.

[10]*In re Dependency of P.A.D.*, 58 Wn. App. 18, 28, 792 P.2d 159 (1990).

perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations,"[11] may consider evidence of the parent's discharge of parenting duties with older children. Morrison's failure to nurture or support his other child is a proper consideration in this case.

In addition, the statute's provision for an early hearing contemplates that the court may consider the parent's pattern of behavior prior to the child's birth even for a parent who has no other children. Morrison's past conduct caused the court to view him as not only unsafe to have custody but even unsafe to have unsupervised visitation. In that Morrison presently will accept no treatment for his disorders and, indeed, acknowledges no need to change, his present disregard for his parental obligations to Infant McGee must be viewed as substantial.

Morrison argues he has simply never had an opportunity to show that he can discharge his parental obligations to Infant McGee because Toni McGee has, against his will, successfully kept him away from the baby since its birth. But this is not a case in which the mother unreasonably erected barriers between her child and its father. Morrison by his own conduct chose to distance himself from the child that Toni McGee would bear. His assaults and threats against Toni McGee made a no-contact order a rational necessity. Morrison cannot now be heard to complain that he has been prevented from showing that he can discharge his parental obligations; his isolation is self-induced.

Morrison observes that the operative provisions of RCW 26.33.120 are not identical to the operative provisions of RCW 13.34.180 for obtaining a termination of parental rights in a dependency action. In the dependency context, for example, the State must prove that certain remedial services have been provided or offered to the parent; no

---

[11]RCW 26.33.120.

comparable requirement exists in adoption matters.[12] But Morrison has presented no argument that his status should be evaluated as though a dependency existed, and he has presented no evidence that services would improve his parenting ability. The differences between the two statutes therefore have no bearing on this case.

A proper regard for parental obligations is reflected in behavior, not intentions. We conclude that the trial court erred by relying solely on Morrison's expressed intentions and desires. Ordinarily, the remedy would be a remand to permit the trial court to apply the correct standard. But here, the court's comprehensive findings, when viewed in light of the correct standard, can reasonably lead to only one conclusion: Lane Morrison failed to perform parental duties under circumstances showing a substantial lack of regard for his parental obligations, and he is, therefore, an unfit parent. We therefore reverse and remand for entry of an order terminating Morrison's parental rights and for further proceedings in the petition for adoption. We do not reach appellant's additional contention that the court erred in concluding it had no authority to permit continued placement of the child with the Hesses following dismissal of their petition to adopt.

Reversed and remanded.

GROSSE and WEBSTER, JJ., concur.

Review denied at 133 Wn.2d 1014 (1997).