**FILED**
**AUGUST 29, 2019**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Interest of | ) | |
| | ) | No. 36656-1-III |
| J.L.M. | ) | |
| | ) | UNPUBLISHED OPINION |
| | ) | |
| | ) | |

FEARING, J. — Shelly Matthews appeals from the superior court's termination of her parental rights in an action for adoption of her son filed by her son's stepmother. We affirm.

FACTS

Because of the nature of this appeal, we employ pseudonyms for all persons, except professional witnesses. We glean our facts from trial testimony.

Shelly Matthews and Richard Mendenhall engaged in a short romantic relationship, during which Matthews became pregnant with their child. Mendenhall knew of the pregnancy and wished to parent the child. On April 3, 2008, Matthews gave birth to a baby boy, Jerry Mendenhall, the subject of this adoption proceeding.

Two days before delivery, Shelly Matthews obtained a restraining order against

Richard Mendenhall.  Matthews feared that Mendenhall would flee from the hospital with Jerry if not restrained from contact with him.  Mendenhall learned of his son's birth thereafter.

In July 2008, Richard Mendenhall filed a parentage action.  In October 2009, Mendenhall saw Jerry for the first time.  Mendenhall and Shelly Matthews entered into a temporary parenting plan a month later.

In 2009, Shelly Matthews sustained an IT band injury, an injury resulting from the overuse of the iliotibial connective tissue on the lateral or outer part of the thigh and knee.  Her physician prescribed oxycodone as she awaited surgery.  According to Matthews, surgery was denied, but she does not identify who denied the surgery.  The physician ceased prescribing oxycodone and referred Matthews to a pain clinic to combat withdrawal from the medication.  Clinic assistance did not succeed, and Matthews contracted a physical addiction to pain medication.

In early 2011, Richard Mendenhall begin living with his girlfriend, Karen.  Karen's two young children joined the household.

On September 30, 2011, the Clark County Superior Court entered a final parenting plan in the parentage action initiated by Richard Mendenhall.  In the meantime, the court gradually increased visitation between Mendenhall and Jerry.  The final parenting plan ordered fifty/fifty custody of Jerry between Mendenhall and Shelly Matthews.  The court entered findings that expressed concern with Matthews' association with her boyfriend,

Aaron Eaton. The court found Mendenhall's living environment more stable, but still ruled that Jerry should spend equal time with his mother.

Shelly Matthews' use of pain medication increased such that Richard Mendenhall noticed changes in Matthews' behavior during the weekly exchange of Jerry. Matthews often changed residences. Exchange locations became irregular. Matthews' boyfriend, rather than Matthews, appeared for exchanges of the boy. At the exchange, Jerry often wore moldy clothes soaked in urine. Jerry commented to his father about his mother's dirty living environment.

In 2011, Shelly Matthews became pregnant with a second child. She ceased pain medications during the pregnancy. Nevertheless, after delivering her second son, Matthews' addiction wrested control of her life. By early 2012, Matthews used methamphetamine and heroin. To support her habit, Matthews sold unlawful drugs. Richard Mendenhall observed further changes in Matthews' demeanor and behavior. Matthews appeared lethargic and uninterested in Jerry's welfare.

Robert Mendenhall and Karen married in 2012 and bore a son together soon after. Jerry developed close relationships with his two stepsisters, Karen, and his baby brother. Jerry became a well-integrated member of the blended household. He calls Karen "Mom."

Shelly Matthews entered jail, in the summer of 2012, for possession of controlled substances with intent to distribute. On July 11, 2012, Richard Mendenhall petitioned

for, and received, a temporary parentage order. The order granted Mendenhall full residential placement of Jerry and restrained Matthews from coming within three hundred feet of the home, work place, or school of Mendenhall or Jerry. The order also restrained and enjoined Matthews from "disturbing the peace" of Mendenhall and Jerry. Ex. 23. The order denied contact between Jerry and Aaron Eaton. The temporary order granted Matthews supervised visits with Jerry every Wednesday from 4 p.m. to 7 p.m. and every Saturday from 10 a.m. to 4 p.m., with Jerry's maternal grandparents supervising the visitations. The restraining order did not expressly prohibit Matthews from sending cards, letters, or presents to Jerry. Matthews, however, interpreted the restraining order as no contact whatsoever because any contact with Mendenhall was never peaceful. The order had no expiration date.

The parties dispute the number of times Shelly Matthews visited Jerry after Richard Mendenhall gained temporary full custody. Matthews claims she attended at least five visits. Richard Mendenhall alleges she attended one or two visits. Mendenhall continued to bring Jerry to Matthews' mother's house even though Matthews quit appearing. Mendenhall thought Jerry would benefit by visiting with his grandmother, Diane Kitchner. Shelly Matthews last visited Jerry on September 29, 2012.

On February 20, 2013, Richard Mendenhall filed for a modification to the parenting plan shifting all parental responsibilities to himself. Matthews did not appear at a scheduled trial. The superior court entered a default order and ordered permanent

residential placement with Mendenhall. The court found that RCW 26.09.191 factors applied because of Matthews' willful abandonment, neglect, substantial nonperformance of parenting functions, a long-term impairment from drug, alcohol or other substance abuse, the absence of emotional ties between Matthews and Jerry, and abusive initiation of conflict that created the danger of serious damage to the child's psychological development. The superior court found that Matthews engaged in conduct detrimental to the well-being and safety of Jerry, including criminal conduct, drug use, and abandonment.

In December 2013, Shelly Matthews reentered prison after a conviction for possession with intent to deliver a controlled substance and possession of a controlled substance. Matthews' youngest son went to live with Diane Kitchner, Matthews' mother. Jerry continued to reside thereafter with Richard Mendenhall and his wife, Karen.

While in prison, Shelly Matthews worked as a telemarketer on work release. After release from prison in January 2015, Matthews moved into Oxford House, a recovery home in Vancouver, Washington. Matthews continued her employment as a telemarketer for one year. She also completed a drug treatment program. Matthews participated in Alcoholics Anonymous and Narcotics Anonymous. She maintained her sobriety, obtained a driver's license, and bought a car. During this year of self-improvement, Matthews did not contact Jerry.

Shelly Matthews made three child support payments for Jerry between 2013 and

2014 through involuntary wage garnishments. Following her release from prison in January 2015, Matthews' wages were regularly garnished for support payments.

On January 14, 2016, with some stability and recent sobriety, Shelly Matthews filed a petition for modification of the parenting plan. She requested an order to visit Jerry and gradually reintroduce herself back into his life after a four-year absence.

PROCEDURE

This appeal arises from Karen Mendenhall's February 2016 petition for termination of the parent-child relationship between Shelly Matthews and Jerry in order to free Jerry for adoption by Karen. Shelly Matthews filed a responsive declaration and an objection to termination of her parental rights and the adoption of Jerry.

Karen Mendenhall's petition proceeded to trial in December 2017. Jerry was then eight years old.

Clinical psychologist, Dr. Landon Poppleton, testified at trial for Shelly Matthews. Dr. Poppleton explained that, even though a child lacks a secure attachment to a biological parent, the court should not presume that the child's best interests are served by severing the parent-child relationship. Dr. Poppleton noted the difficulty of reconnecting a parent and child after the biological parent's long absence, but concluded the reconnection can be successful.

Clinical psychologist Dr. Valerie Correa, testified at trial for Karen Mendenhall. Karen first consulted Dr. Correa in spring of 2016, and Correa had completed multiple

evaluations of Jerry and Karen's relationship. Dr. Correa testified that Jerry and Karen enjoyed a strong bond and a secure attachment. Correa testified that Jerry referred to Shelly Matthews by her first name and only called Karen "mom." Correa also testified that Jerry expressed fears that Matthews might kidnap him if Matthews ever had an unsupervised visit. Jerry told Dr. Correa that he has no positive memories of Matthews and that she is a stranger to him.

Social worker Lori Whittaker, who conducted an adoptive home study at the request of the Mendenhalls, also testified. During her time in the home, Whittaker observed a bonded and blended family. Whittaker testified to Jerry's happiness with his father and Karen and that Jerry considered Karen to be his mother. Whittaker opined that adoption by Karen would serve Jerry's best interests.

After trial, the superior court ordered the termination of Shelly Matthews' parental rights to Jerry. The court entered the following findings of fact:

## II. FINDINGS OF FACT

1. [Karen Mendenhall] has established by clear, cogent and convincing evidence that it is in [Jerry Mendenhall's] best interest to terminate the parental relationship with [Shelly Matthews].

2. Ms. [Matthews] has failed to perform parenting functions required by RCW 26.33.120 under circumstances that demonstrate a substantial lack of regard for her parental obligations.

3. Ms. [Matthews] is withholding consent to the termination of her parental rights and to the adoption by Petitioner contrary to the best interest of the child, [Jerry Mendenhall].

4. Petitioner has shown by clear, cogent and convincing evidence that Ms. [Matthews] is unfit under the statute RCW 26.33.120.

5. Ms. [Matthews] has been absent from the child's life for five (5) years, which constitutes a majority of his life.

6. Ms. [Matthews] underwent a lengthy parentage action and is no stranger to the legal system. She is aware of the legal avenues she could have pursued through court to modify the parenting plan entered February 20, 2013.

7. After Ms. [Matthews] was released from her incarceration, she concentrated on her own best interest of maintaining her sobriety in place of seeing to the needs of [Jerry Mendenhall].

8. Ms. [Matthews] has not yet regained custody of her other child in the legal custody of her mother, [Diane Kitchner].

9. Ms. [Matthews] needed to step up to her parental responsibilities at an earlier point in time.

10. The 2012 restraining order was entered to protect the child from Ms. [Matthews] because she presented a danger to him due to her drug addictions.

11. It is noteworthy that the child's maternal grandmother, [Diane Kitchner], was unaware that Ms. [Matthews] had been out of prison for a year prior to contacting her about her other child.

12. [Karen Mendenhall] stepped up to provide for the child's needs at the time he needed a safe and secure home, and she continues to do so.

Clerk's Papers (CP) at 195-96.

LAW AND ANALYSIS

Findings of Fact

RCW 26.33.120 controls termination of parental rights for purposes of an adoption. The statute declares:

(1) Except in the case of an Indian child and his or her parent, the parent-child relationship of a parent may be terminated upon a showing by clear, cogent, and convincing evidence that it is in the best interest of the child to terminate the relationship and that the parent has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations and is withholding consent to adoption contrary to the best interest of the child.

8

The adoption code requires clear, cogent, and convincing evidence to sustain an order terminating parental rights. *In re Interest of H.J.P.*, 114 Wn.2d 522, 532, 789 P.2d 96 (1990). Pursuant to this standard of proof, the ultimate fact in issue must be shown by evidence found to be "highly probable." *In re Interest of Pawling*, 101 Wn.2d 392, 399, 679 P.2d 916 (1984).

Shelly Matthews assigns error to all of the trial court's findings of fact. A trial court's finding of fact will not be disturbed on appeal if supported by substantial evidence. *In re Welfare of Sego*, 82 Wn.2d 736, 739, 513 P.2d 831 (1973). Substantial evidence constitutes evidence sufficient to persuade a fair-minded rational person of the truth of the declared premise. *In re Welfare of A.B.*, 181 Wn. App. 45, 59, 323 P.3d 1062 (2014). A conclusion of law erroneously labeled as a finding of fact is reviewed as a conclusion of law. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We do not reweigh the credibility of witnesses. *In re Welfare of Sego*, 82 Wn.2d at 739-40.

RCW 26.33.120 does not require that the petitioner prove underlying facts by clear, cogent, and convincing evidence. The court must find clear, cogent, and convincing evidence only for the ultimate facts that termination serves the child's best interests and the parent has failed to perform parental duties while showing a substantial lack of regard for parental obligations.

9

We address each discrete finding of fact. Because of the conclusory nature of findings of fact one, three, and four, we address those findings later. Sufficient evidence, if not clear, cogent, and convincing evidence, supports all underlying findings.

"2. Ms. [Matthews] has failed to perform parenting functions required by RCW 26.33.120 under circumstances that demonstrate a substantial lack of regard for her parental obligations." CP at 195. Shelly Matthews testified that she had not expressed any love or affection to Jerry in the last five years. Matthews had never sent a letter or card to Jerry. She agreed that she did not provide any food, clothing, or medical care for Jerry in the last five years.

"5. Ms. [Matthews] has been absent from the child's life for five (5) years, which constitutes a majority of his life." CP at 196. Shelly Matthews admitted in a declaration that she has not seen Jerry since September 2012. Matthews excuses her absence because of her recovering from drug addiction. Nonetheless, the finding does not elaborate as to the reason for the absence.

"6. Ms. [Matthews] underwent a lengthy parentage action and is no stranger to the legal system. She is aware of the legal avenues she could have pursued through court to modify the parenting plan entered February 20, 2013." CP at 196. Testimony showed Shelly Matthews to have participated in the legal process to establish a parenting plan. She brought a motion to modify the plan in January 2016. Contrary to Matthews'

assertion, the trial court did not find that she had a level of sophistication to effectively fight the legal system to gain access to her child.

"7. After Ms. [Matthews] was released from her incarceration, she concentrated on her own best interest of maintaining her sobriety in place of seeing to the needs of [Jerry Mendenhall]." CP at 196. Shelly Matthews agreed during direct examination that for one year she worked to improve herself without attempting to visit her son. During this time, Matthews provided no necessities such as food, clothing, health care, or social guidance for Jerry.

"8. Ms. [Matthews] has not yet regained custody of her other child in the legal custody of her mother, [Diane Kitchner]." CP at 196. Diane Kitchner, Shelly Matthews' mother, testified at trial that she still maintained custody of Matthews' other son.

"9. Ms. [Matthews] needed to step up to her parental responsibilities at an earlier point in time." CP at 196. This finding of fact is more a judgment as to Shelly Matthews' obligations, rather than a statement of fact. Nevertheless, Matthews met none of her parental obligations or maintained any visitation with Jerry since September 29, 2012. She waited four years since last seeing her son to seek a modification to the parenting plan.

"10. The 2012 restraining order was entered to protect the child from Ms. [Matthews] because she presented a danger to him due to her drug addictions." CP at 196. Shelly Matthews admitted in her February 22, 2016 declaration that she was unfit

11

due to her active drug addiction. Matthews also testified at trial that the court restrained her because of criminal activity and her use of heroin and methamphetamine. She agreed that the restraining order sought to protect Jerry from her.

"11. It is noteworthy that the child's maternal grandmother, [Diane Kitchner], was unaware that Ms. [Matthews] had been out of prison for a year prior to contacting her about her other child." CP at 196. Diane Kitchner testified that she first spoke, in December 2015, to Shelly Matthews after Matthews' release from prison in January 2015. Although the time period may have been closer to eleven months than one year, we do not fault the superior court for rounding the number to one year.

"12. [Karen Mendenhall] stepped up to provide for the child's needs at the time he needed a safe and secure home, and she continues to do so." CP at 196. Shelly Matthews assigns error to this finding, but in her brief she impliedly concedes the accuracy of the fact. Testimony from Richard Mendenhall, Karen Mendenhall, Lori Whittaker, and Dr. Valerie Correa show that Karen has been a mother figure for Jerry for years.

Parental Unfitness

In finding of fact number four, the court concludes that Karen Mendenhall established by clear, cogent, and convincing evidence that Shelly Matthews is an unfit parent under RCW 26.33.120. We agree.

Under RCW 26.33.120(1), in order for the court to terminate the parental rights of

12

a nonconsenting parent, the court must find parental unfitness on the part of the nonconsenting parent. *In re Interest of H.J.P.*, 114 Wn.2d 522, 531 (1990). Parental unfitness is established by showing that the nonconsenting parent "has failed to perform parental duties under circumstances showing a substantial lack of regard for his or her parental obligations . . . ." RCW 26.33.120(1). Parental obligations consist of:

> (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance.

*In re Adoption of Lybbert*, 75 Wn.2d 671, 674, 453 P.2d 650 (1969). The overwhelming evidence established that Shelly Matthews performed none of these obligations for more than five years. In *In re Interest of Pawling*, 101 Wn.2d 392 (1984), the Washington Supreme Court held that the evidence supported the termination of parental rights of a parent who had not expressed love and affection, personal concern, or social and religious guidance to his child for over five years and had supplied negligible financial support for the child.

Shelly Matthews underscores that she showed love and regard for Jerry by declining to interrupt his life during her addiction. She also emphasizes that her absence resulted from the 2012 restraining order. *In re Adoption of Infant McGee*, 86 Wn. App. 471, 937 P.2d 622 (1997) addressed this similar focus. In *McGee*, the court found that the father chose to distance himself from the child and the father's assaults and threats

13

against the mother necessitated the no-contact order. The law does not consider abandonment of a child to be an expression of love and affection, no matter the reason for the abandonment.

We note that, despite the restraining order, Shelly Matthews possessed visitation rights with Jerry. Matthews failed to meaningfully attend more than two of the supervised visitations. Matthews resided in jail only for thirteen months during the five years that she absented herself from Jerry's life. When she gained employment on release from prison, she paid child support involuntarily through wage garnishments. In short, overwhelming evidence showed that Matthews had been an unfit parent.

Shelly Matthews cites *In re Interest of H.J.P.*, 114 Wn.2d 522, 531 (1990), *In re Interest of S.G.*, 140 Wn. App. 461, 166 P.3d 802 (2007), *In re Welfare of C.B.*, 134 Wn. App. 942, 143 P.3d 846 (2006), *In re Adoption of Infant McGee*, 86 Wn. App. 471 (1997), and *In re Welfare of Sego*, 82 Wn.2d 736 (1973) for the proposition that the adopting parent must prove current parental unfitness. In turn, Matthews contends that the superior court violated her right to due process by terminating her rights based on past parental unfitness. She emphasizes her sobriety and fight to gain stability since early 2013. We disagree with Matthews' legal contention.

RCW 26.33.120(1) reads that the adopting parent may show parental unfitness by past parental behavior, evidenced by the language that the parent "*has* failed to perform parental duties." RCW 26.33.120(1) (emphasis added). Those decisions do not support

14

the need to show current unfitness in the adoption setting. *In re Interest of S.G.*, *In re Welfare of C.B.*, and *In re Welfare of Sego* involve dependency actions, and, therefore, RCW 13.34.180(1) controlled the decisions. Best Interests of Jerry

The trial court's finding of fact number three reads: "Ms. [Matthews] is withholding consent to the termination of her parental rights and to the adoption by Petitioner contrary to the best interest of the child [Jerry Mendenhall]." CP at 195. Shelly Matthews contends that, while she withheld her consent to adoption, Jerry's best interests lie with maintaining a relationship with her. She further contends that the finding of fact is a legal conclusion that should be reviewed de novo by this court.

Shelly Matthews cites no legal authority for the contention that the finding is a conclusion or that this court reviews the finding de novo. We deem the statement of best interests to be a finding of fact, albeit an ultimate finding, on which the trial court weighs numerous underlying facts.

Evidence at trial demonstrated that Jerry thrives with Karen Mendenhall and his father. The record established that, from Jerry's perspective, Karen is his mother. Moreover, the expert who conducted the home study noted that Jerry felt safe and protected with Karen and that given all of her observations, she felt it would be in Jerry's best interest to be adopted by Karen. Jerry has also formed close relationships with Karen's two daughters.

15

## Best Interests

Combined with the finding that Shelly Matthews is an unfit parent, overwhelming evidence showed that Jerry's bests interest are served by severing Matthews' parental rights. In *In re Interest of Pawling*, 101 Wn.2d 392 (1984), the Washington Supreme Court affirmed a finding that the child's best interests were served by termination of a natural parent's rights when the underlying facts showed that the child's psychological father was his stepfather and that the boy had been integrated into his mother's and stepfather's household.

## Due Process

Washington courts have rejected the argument that due process and equal protection require that a nonconsenting parent in a private termination and adoption action pursuant to RCW 26.33.120 receive the same safeguards and services as afforded a parent in a dependency proceeding. *In re Interest of Infant Child Skinner*, 97 Wn. App. 108, 110, 982 P.2d 670 (1999). A dependency action allows the court to "order reunification efforts and remedial services to address the circumstances that prompted intervention by the State." *In re Interest of Infant Child Skinner*, 97 Wn. App. at 117. The goal is to reunite the child with his or her legal parents if reasonably possible. In contrast, the adoption statute, RCW 26.33.120(1), does not provide for State intervention. Instead, the purpose of the adoption process "is to provide stable homes for children" and to protect the best interests of the child. RCW 26.33.010.

No. 36656-1-III
*In re the Interest of J.L.M.*

A parent whose parental rights are terminated through an adoption proceeding is not similarly situated to a parent whose rights are terminated through a dependency proceeding. *In re Interest of Infant Child Skinner*, 97 Wn. App. at 117-18. Therefore, the standard for termination and the procedures set forth within the adoption act satisfy the requirements of due process. *In re Interest of Infant Child Skinner*, 97 Wn. App. at 110.

## CONCLUSION

We affirm the superior court's termination of the parental rights of Shelly Matthews to Jerry Mendenhall.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Siddoway, J.

17